AMERICAN HOME ASSURANCE COMPANY, Plaintiff-Appellant, *v.* THE CITY OF GRANITE CITY *et al.*, Defendants-Appellees.

Fifth District   No. 77-113

Opinion filed April 24, 1978.—Rehearing denied May 29, 1978.

Reed, Armstrong, Gorman & Coffey, of Edwardsville (Stephen W. Thomson, of counsel), for appellant.

Irvin Slate, Jr., of Granite City, for appellees.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Plaintiff American Home Assurance Company (AHA) brought an action for a declaratory judgment in order to establish its rights and obligations under a professional liability insurance policy issued to the City of Granite City. Plaintiff alleged that the City had forfeited its rights under the policy with respect to a shooting incident which occurred on May 22, 1973 as a result of the City's failure to comply with the policy provisions requiring notice as soon as practicable of an incident likely to give rise to a claim under the policy. Plaintiff appeals from a judgment of the trial court finding that Granite City complied with the notice provisions of the policy and declaring that plaintiff owes a duty under the policy to Granite City to defend and indemnify the City according to the terms of the policy for losses sustained in litigation arising out of the shooting incident of May 22, 1973.

Granite City obtained the AHA professional liability policy through a local insurance agent. All Granite City's business with respect to the policy was conducted with the agent. The City never dealt directly with AHA.

The policy was in full force and effect on May 22, 1973, when Mike Collins, age 16, was mortally wounded by three Granite City police officers acting in the course of their regular duties. The AHA policy contained the following provision regarding the insured's obligation to provide the company with timely notice of potential claims under the policy:

"In the event of an incident likely to give rise to a claim hereunder written notice containing particulars sufficient to identify the

insured and also reasonably obtainable information with respect to the time, place and circumstances thereof and the names and addresses of the injured and of available witnesses shall be given by or for the insured to the company or any of its authorized agents as soon as practicable."

On July 11, 1973, the City of Granite City received written notice from an attorney of an intention to file suit over the shooting incident on behalf of Vonda Collins, Michael Collins' mother and administratrix of his estate. The City claimed that it notified the agent of Vonda Collins' intention to sue on September 21, 1973, when a meeting was held concerning Granite City's professional liability insurance between the agent, the assistant city attorney, the chief of police and a city councilman. On May 17, 1974, Vonda Collins filed suit against Granite City and the three officers involved in the shooting incident. Granite City mailed the summons and complaint to the agent who forwarded the information to the AHA claims representative in Springfield, Illinois.

At the end of all of the evidence, the trial court ruled as a matter of law that Henderson was AHA's agent for the purpose of receiving notice of policy claims. The court submitted three special interrogatories to the jury on the issue of whether notice had been given as soon as practicable. The jury found (1) that Henderson had received notice of the incident at the September 21, 1973, meeting and (2) that this notice was as soon as practicable. The third interrogatory is not material to the issues in this appeal.

The critical question presented in this case is whether requirement of giving the notice under the policy was satisfied. The identical provision in this policy has been interpreted to require notification to the company within a reasonable time considering all of the facts and circumstances of a particular case. (*Barrington Consolidated High School v. American Insurance,* 58 Ill. 2d 278, 319 N.E.2d 25.) In *Barrington* the Supreme Court said at pages 281-82:

"Provisions in policies stating when the insurer must be notified of a covered occurrence have generally been interpreted to require notification of the company within a reasonable time, considering all the facts and circumstances of the particular case. Decisions illustrating this general holding include *Walsh v. State Farm Mutual Automobile Insurance Co.,* 91 Ill. App. 2d 156; *Hoffman & Klemperer Co. v. Ocean Accident & Guaranty Corp.* (7th Cir. 1961), 292 F.2d 324; see also 18 A.L.R. 2d 443, 448 (1951).

Couch's comment on the term used in the policy here for the time of reporting, 'As soon as is practicable' is: ' "As soon as practicable" in a policy covering liability for personal injury and property damage means within a reasonable time, and what is a

reasonable time depends upon the facts and circumstances of the case.' 13 Couch on Insurance 2d sec. 49:328 (1965); see also 2 Long, The Law of Liability Insurance sec. 13.09 (1974)."

The court said at page 281:

"A provision in an insurance liability policy requiring an insured to give the insurer notice of an accident is a reasonable policy requirement, one which affords the insurer an opportunity to make a timely and thorough investigation and to gather and preserve possible evidence. *McFadyen v. North River Insurance Co.*, 62 Ill. App. 2d 164."

In *Kenworthy v. Bituminous Casualty Corp.*, 28 Ill. App. 3d 546, 328 N.E.2d 588, the court held that notice has been uniformly interpreted to mean a reasonable time and this was a question of fact for the jury. The court went on to say at page 549:

"However, there is another factor present in this case. A jury could have decided that the company suffered no prejudice because of the delayed notice. Prejudice is one of the factors which determines what is a reasonable time in which to give notice. (*Haskell v. Siegmund*, 28 Ill. App. 2d 1, 170 N.E.2d 393; *Simmon v. Iowa Mutual Casualty Co.*, 3 Ill. 2d 318, 121 N.E.2d 509.) The purpose of notice is to enable the insured to make a prompt and thorough investigation. Here many months had already elapsed since the accident and, in any case, the insured was successful in denying his liability.

In *Higgins v. Midland Casualty Co.*, notice on an accident insurance policy was not given until more than a year after the accident. The insurance policy stated that notice must be given 'as soon as possible.' In that case, the court stated that the question of reasonableness of notice was for the jury and it was error for the court to direct a verdict.

We hold that it was proper for the trial judge to submit the question of reasonableness to the jury. Reasonable men could draw contrary inferences from the facts presented. Whether timely notice had been given was therefore a question of fact."

■■■ A provision in a liability insurance policy requiring notice is a reasonable and valid stipulation. Its purpose is to give the insurer an opportunity to make a timely and adequate investigation of all the circumstances. No general rule can be promulgated as to what constitutes a reasonable time within which to give notice since this question depends upon the facts and circumstances of each particular case. One of the factors to be considered include the length of time in giving the notice, *i.e.*, was the delay unreasonable, and was the insurer prejudiced by reason of the delay.

Plaintiff's evidence consisted of testimony from the chief of police of Granite City, called pursuant to section 60 of the Civil Practice Act, James Henderson, the agent who sold the policy in question to the City and Robert A. Orndorff, claims supervisor for an insurance association which included the plaintiff as one of its members.

Chief Veizer testified that he knew the policy in question was in force on May 22, 1973, when Michael Collins, aged 16, was shot and killed by a Granite City police officer. He was promptly notified of the incident. He remembered receiving a letter on July 11, 1973, wherein a law firm indicated an intent to sue the City because of the incident. He immediately notified the city clerk and city attorney.

The agent testified that he was an insurance broker and real estate broker. He solicited and sold the policy in question to the City. He was acting as a broker when he sold the policy and when he did this he was acting for the City. He was then asked if he had given a written statement on the Collins matter and he said "yes." He was then shown the statement and the following ensued:

"Q. Mr. Henderson, what was the first notice that you had that a shooting incident involving Michael Collins that occurred on May 22, 1973—what is the first notice that you had of that?

A. Now, you're referring to the first notice that there was a claim involved?

Q. Yes.

A. May I look at my notes or—

Q. Sure. Do you have a copy of the statement?

A. I have a copy, yes. September 21, 1973.

Q. When—let me ask you this question. Are you referring to the statement that you gave us? Is that what you're using?

A. No. I am referring to some notes I had the day I was down there, that I took from my diary.

Q. When was the claim regarding Michael Collins first reported to you by the City or by anyone in its behalf?

A. September 21, 1973.

Q. And where was that?

A. It was in the Police Chief's Office. No, wait a minute, here, you've got me confused here. Yeah, the first time that I was aware of the claim was when I received the summons from the City.

Q. And what was that date?

A. That date was the date of that summons was the 22nd of May, 1974.

Q. You're referring to a summons of the Collins vs. The City?

A. Right."

He then testified that he mailed the summons to the A.H.A. claims representative in Springfield.

On cross-examination he testified that he was present on September 21, 1973, when he met the chief of police of Granite City, the assistant city attorney, and an alderman who was chairman of the finance committee for the City of Granite City. The purpose of the meeting was to discuss insurance problems. When asked if the Collins case was discussed, he said, "Not that I know of." He was asked if he sometime acted as an agent or always as a broker. He said that 80% of their business was in the agency contact business.

"MR. SLATE: Thank you. Do you instruct your insureds when you're acting as a broker instead of an agent that that is a fact in the claim from the beginning—

A. No.

Q. So whether you are a broker or an agent, you still receive the claims from the insureds and pass them along to the company?

A. Correct.

Q. And that is the way things were handled in the particular case, wasn't it?

A. Correct."

He then testified without objection that he read a number of newspaper articles concerning the Collins killing. He was aware of the incident and aware of the provisions of the policy. He was the only person the City ever dealt with on this and other policies.

Robert Orndorff, on behalf of the plaintiff, testified that he was claims supervisor with the American International Companies and that one of the companies in that association was the American Home Assurance Company. The first he knew of the incident was on May 23, 1974 when he got the complaint. (His address was 133 So. 4th Street, Springfield, Illinois.) The great bulk of claims submitted to him as claims supervisor are submitted by those who sold the policies. All claims other than Collins would have been handled the same way.

Defendant's motion for a directed verdict was denied.

An alderman who was chairman of the finance committee of the City of Granite City testified that he, the chief of police, the insurance agent, and the assistant city attorney participated in a meeting on September 21, 1973, at the office of the chief of police. Two pending claims were discussed, one of them being the present case. They were discussing the other case when the chief handed the agent a folder about the Collins case.

The chief of police testified that there was a meeting in his office on September 21, 1973. Present were the assistant city attorney, Alderman

Parmley, chairman of the Police Committee, the insurance agent and himself. He testified:

"Q. You may testify, if you recall, what you told Mr. Henderson at that meeting about the Collins case.

A. I don't remember verbatim what we discussed about it. I know I mentioned to him that aside from the Mihu case we had another case, which we have notice on and I showed him the notice of intent to sue at that time and asked him what if anything further I had to do.

Q. What did he say in response to that question?

A. He advised me as near as I can remember that—to the best of my knowledge is that notifying him as their agent was the same as notifying the company.

Q. Did you give him a copy of the notice of intent?

A. I don't remember, Mr. Slate.

Q. Was there further discussion of the Collins case, if you recall?

Q. Not too much, no, Sir.

Q. Up to the date of that meeting, September 21, 1973, had you met any officer, agent or employee of the American Home Assurance Company other than Jim Henderson?

A. No, Sir."

He testified that the police department investigated the case and made up a complete investigation file.

"This case file lists the victims, the defendants, the warrants that were issued, the arraignments, statements, who they were taken from, by whom and also the investigation reports of various officers within the Police Department."

At the close of the case the trial judge ruled that the question whether notice was given as soon as practicable really meant within a reasonable time and that this was a question of fact for the jury. Whether notice was given to the insurance agent on September 21, 1973, was a question of fact for the jury. He also ruled that as a matter of law the agent was an authorized agent for the purpose of receiving notice of the claim.

The jury found that the insurance agent had received notice of the incident at the September 21, 1973, meeting and that this notice was as soon as practicable.

Plaintiff contends that the trial court erred when it held that Henderson was, as a matter of law, an agent for the limited purpose of service of the notice of claim.

"As a general rule, whatever competent evidence has a tendency to prove an agency is admissible, even though such evidence may not be full and satisfactory, and agency, like any other condition or fact, may be established by circumstantial evidence. In other

words, the fact of agency does not require proof of formal appointment to establish it, since it may be inferred from other facts, the conduct and statements of parties, and relevant circumstances. Thus, proof that the principal permitted the agent to perform similar acts and transactions with other persons has always been accepted to establish the existence of an agency, although evidence of general reputation to prove existence of the relationship of principal and agent is inadmissible unless it is accompanied by other evidence that the principal sought to be charged knew of the report and acquiesced in it." 3 Am. Jur. 2d *Agency* §351 (1962).

"The testimony of the alleged agent as a witness is competent to prove his agency and the extent thereof, as where he testifies to his employment, or to such a course of conduct or dealing as will justify the presumption of the agent's authority to act and bind his principal; * * *." 1 Ill. L. & Prac. *Agency* §17 (1953).

"In determining the existence or the nonexistence of an agency in any particular instance, the firmly established general rule is that when the facts relied upon to establish its existence are undisputed, and conflicting inferences cannot be drawn from such facts, the question of the existence of the agency is one of law for the court. Likewise, the question whether there is any competent evidence reasonably tending to prove an agency relationship is a question of law to be determined by the court." 3 Am. Jur. 2d *Agency* §359 (1962).

In this case Henderson testified that 80% of his business was in the agency contact business; that he always received the claims from the insured and passed them along to the company and that was the way this case was handled. The claims supervisor for the plaintiff testified that the great bulk of claims submitted to him as claims supervisor were submitted to him by those who sold the policies, that this was what was done in this case and all claims other than this case would have been handled in the same way.

■■ In our opinion the evidence that Henderson was an agent for the limited purpose of service of notice of claim is undisputed so the trial court did not err in directing a verdict on this point. There was no conflicting evidence or different reasonable inferences to be drawn.

■■ The plaintiff also contends that the trial court erred in denying plaintiff's motion for a directed verdict at the close of all the evidence because the undisputed evidence disclosed that notice to the plaintiff was not given within a reasonable time as a matter of law. We have held that as a matter of law Henderson was an agent for the purpose of receiving claims on this policy. If the jury believed the testimony of the Granite

City alderman and chief of police, notice was given to Henderson 72 days after the City received notice of the intent to sue. The City had made a complete investigation of the shooting of Collins shortly after the incident. The City's whole investigative file was available to the plaintiff. We find it difficult to see how the plaintiff could have been prejudiced by this 72-day delay. In our opinion the jury's determination that notice was given to Henderson within a reasonable time was not against the manifest weight of the evidence.

Plaintiff also contends that certain newspaper articles on the Collins shooting were improperly admitted by the trial court and that this error prejudiced its case. Prior to their admission, Henderson testified that he read the newspaper every day and had, in fact, read several newspaper accounts of the shooting. Under these circumstances we fail to see how the introduction of the newspaper articles could have prejudiced plaintiff's case.

■■ Plaintiff's final contention on appeal is that the closing argument of counsel for defendant Granite City improperly appealed to the jury's passion and sympathy and misrepresented the law to such an extent as to prejudice the outcome of the case. Plaintiff cites several comments attributed to defense counsel in support of this claim, only a few of which raise even the slightest hint of impropriety or prejudice. Among these was defense counsel's argument that the insurance company was attempting to "duck its responsibility" in this case. However, plaintiff failed to object to any of the comments now cited on appeal as improper and prejudicial and as a result is precluded from raising the issue on appeal. (*Mulvey v. Illinois Bell Telephone Co.*, 53 Ill. 2d 591, 598, 294 N.E.2d 689.) Moreover, based on our review of the record, we cannot say that the comments of defense counsel prejudiced or unduly affected the jury's verdict. See *Bruske v. Arnold*, 44 Ill. 2d 132, 139, 254 N.E.2d 453.

The judgment of the trial court is affirmed.

Affirmed.

KARNS and JONES, JJ., concur.