JESS LONG, Plaintiff-Appellant and Cross-Appellee, v. THE GREAT CEN-TRAL INSURANCE COMPANY, Defendant and Third–Party Plaintiff-Appellee (Bloomington Insurance Marketing Agency, Inc., Third–Party Defendant-Appellee and Cross-Appellant).

Fourth District    No. 4—89—0314

Opinion filed October 31, 1989.

Jerry N. Raymer, of Raymer Law Office, of Bloomington, for appellant.

John P. Fleming, of Quinn, Johnston, Henderson & Pretorius, Chartered, of Peoria, for appellee Great Central Insurance Company.

Jack C. Vieley, of Peoria, for appellee Bloomington Insurance Marketing Agency, Inc.

JUSTICE STEIGMANN delivered the opinion of the court:

This litigation arose as a result of the failure of an insured to deliver documents relevant to a lawsuit against him to his insurer, contrary to the requirements of the applicable insurance policy. Instead, the insured purportedly delivered these documents to the insurance agency from which he purchased the policy in question. The principal issues on appeal are (1) whether the insurance agency was the agent of the insurer for purposes of accepting notices and documentation of lawsuits against its insureds, and (2) whether the insurer had actual notice of the lawsuit against its insured sufficient to impose upon it a duty to defend the suit.

The insurance policy in question is a dramshop policy issued by defendant Great Central Insurance Company (Great Central) to plaintiff Jess Long (Long). Long purchased the policy through Bloomington Insurance Marketing Agency, Inc. (BIMA). On March 2, 1984, Long was served with a complaint and summons in a dramshop action. The plaintiff in that lawsuit is Neva R. Gipson, administrator of the estate of decedent Bobby D. Gipson. Long delivered the complaint and summons to BIMA, but BIMA apparently did not forward them to Great Central. No appearance was filed on behalf of Long,

and on March 28, 1985, a default judgment in the amount of $23,645.65 was entered against him.

Only two counts of Long's complaint—second-amended count III and count IV—are here at issue. Count III requests damages for breach of Great Central's obligation to defend the lawsuit against Long on the basis that delivery of the suit papers to BIMA, Great Central's purported agent, was the same as delivery of those documents to Great Central. Count IV requests damages for failure to defend the Gipson lawsuit on the basis Great Central possessed in its files information which should have disclosed to it the fact that this lawsuit had been filed. The circuit court entered summary judgment in favor of Great Central as to second-amended count III and dismissed count IV. Long appeals these orders.

In addition to Long's claims against Great Central, this case also involves a third-party action by Great Central against BIMA. Great Central alleged any damages to Long are attributable to BIMA's failure to transmit the summons and complaint in Gipson's lawsuit against Long to Great Central. BIMA denied these allegations and specifically denied ever receiving the summons and complaint in that lawsuit. BIMA also filed an affirmative defense to Great Central's third-party complaint and filed a cross-claim against Long. In its affirmative defense, BIMA asserted Long had a valid defense to Gipson's lawsuit and Great Central should therefore have sought to vacate the default judgment entered against Long pursuant to section 2—1401 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401). BIMA alleged Great Central's failure to do so barred any recovery by it, since this amounted to a failure on its part to mitigate its damages.

BIMA also filed a motion to recuse counsel for Long on the basis that Long's counsel, Mike McElvain, ought to be called as a witness for Long.

The circuit court dismissed BIMA's affirmative defense and cross-claim. BIMA argues on appeal that the dismissal of its affirmative defense and cross-claim, as well as the denial of its motion for recusal of Long's counsel, should be reversed.

We first consider the circuit court's entry of summary judgment as to second-amended count III of Long's complaint. The dramshop policy which Great Central issued to Long provides in pertinent part:

> "2. NOTICE OF CLAIM OR SUIT. Upon the happening of any occurrence likely to give rise to a claim under this policy, or upon the receipt by the insured of notice or knowledge of any claim or of any suit or proceeding, notice in writing with

full particulars shall be given to Great Central Insurance Company, immediately after same comes to the knowledge of the Insured or Insured's representative and every letter, claim, writ, summons or process shall be forwarded to Great Central Insurance Company immediately upon receipt by the insured."

■ In his argument, Long refers to policy language providing for delivery of notice of losses to Great Central or "any of its authorized agents," but this language is contained in a property insurance policy issued to Long by Great Central. It is not included in the dramshop policy here at issue. In opposition to Great Central's motion to strike from Long's brief, the reference to the language of the property insurance policy, Long states the latter policy has the same number as the dramshop policy here at issue, and thus these two policies are in fact one policy. However, the full number of the property insurance policy is SMPGR 1431318, while the full number of the dramshop policy is LLGR 1431318. If anything, the similarity of these numbers simply indicates Great Central assigns the same numerals to all policies held by a particular insured. Without more, the similarity in the policy numbers does not signify the issuance to Long of a single policy providing both property coverage and dramshop liability coverage.

Moreover, the property insurance policy containing the language quoted by Long was not part of any affidavit, deposition, admission, exhibit, or pleading on file in the circuit court. It is contained in the record solely because it was filed in response to a discovery request. Therefore, there was no basis for the circuit court to consider the property insurance policy in ruling on Great Central's motion for summary judgment. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) For this reason, we allow Great Central's motion to strike from Long's brief the quotation from the property insurance policy which Great Central issued to Long.

During the relevant time period, there was in force an agency agreement between BIMA and Great Central. However, this agreement pertained only to such matters as sales of insurance policies, the generation of new insurance business, and the collection of premiums. The agency agreement contained no language concerning BIMA's supplying to Great Central information or documents relating to claims against Great Central's insureds.

At a deposition, Long stated that approximately one year to 18 months prior to being sued by Gipson, he gave documents pertaining to a different lawsuit to BIMA in the same manner as he did the documents pertaining to the Gipson lawsuit. Long stated that the former lawsuit was "taken care of," and that he did not have to pay anything

for the defense. Long also testified that prior to Gipson's filing suit against him, he received a letter from Gipson's attorney, which he took to BIMA. Also, Long made premium payments to BIMA, and he understood BIMA was Great Central's agent. Furthermore, a Mr. Tinervin of BIMA described during deposition testimony a standard procedure that BIMA had for handling "suits *** received from policyholders." Finally, Great Central's claims manager stated that in 1983, over 50% of liability claims were reported to the company by agents, and that there is no difference in the company's approach to liquor liability claims compared to other liability claims.

Long asserts that with respect to second-amended count III, the above matters create a genuine issue of fact whether BIMA was authorized to accept notices of claims and papers pertaining to lawsuits on behalf of Great Central. Long argues that at a minimum, Great Central's allowing BIMA to accept claim information from its insureds, and specifically from Long involving earlier, unrelated lawsuits, created an apparent agency on the part of BIMA to accept such information on Great Central's behalf.

Great Central argues there have been no words or acts on its part which would establish an agency relationship under which BIMA was authorized to accept notices of claims and lawsuit papers on Great Central's behalf. Great Central notes that under Illinois law, the actions of purported agents are of no consequence with regard to the creation of an agency relationship unless they have their source in some word or act of the purported principal. (*Crittendon v. State Oil Co.* (1966), 78 Ill. App. 2d 112, 222 N.E.2d 561.) Great Central asserts its passive acceptance from its agents of notices and papers pertaining to claims is insufficient to support a finding of an agency relationship between it and BIMA with regard to the delivery of these materials, since otherwise postmen or other delivery men could be deemed Great Central's agents simply because Great Central accepted suit papers from them. Furthermore, Great Central notes the degree of control exercised over the purported agent by the purported principal is an important factor in determining whether an agency relationship existed. Great Central states, in this case, there is no evidence it held or exercised control over BIMA with regard to the handling of materials pertaining to claims.

In his reply argument, Long asserts that Great Central created, by its conduct, an apparent agency in BIMA to receive information and documents concerning claims, which Great Central is now estopped to deny.

Summary judgment is properly entered when the pleadings,

depositions, and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) In ruling upon a motion for summary judgment, the evidence must be construed strongly against the movant and liberally in favor of the opponent. *Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 434 N.E.2d 50.

▪▪ ▪ Generally speaking, proof of the formal appointment of an agent is not necessary in order to establish an agent-principal relationship. Circumstantial evidence of the conduct and statements of the parties is sufficient for this purpose. (*American Home Assurance Co. v. City of Granite City* (1978), 59 Ill. App. 3d 656, 375 N.E.2d 969, quoting 3 Am. Jur. 2d Agency §351 (1962).) In instances where an insurer repeatedly accepted notices of loss through entities other than agents which it had authorized to accept such notices, courts have held the insurer created in those entities an apparent agency to accept notices of loss, which the insurer was estopped to deny. *Empire Fire & Marine Insurance Co. v. Faith Truck Lines, Inc.* (1988), 178 Ill. App. 3d 356, 533 N.E.2d 441.

▪ In the present case, there is evidence BIMA on a prior occasion accepted documents from Long which concerned a dramshop claim and that Great Central in turn accepted those documents from BIMA. Also, BIMA had established a standardized procedure for handling and submitting to Great Central information concerning losses sustained by, or lawsuits against, Great Central's insureds, and a large percentage of liability claims, including dramshop claims, were received by Great Central from agents. On the basis of similar evidence, the court in *Empire* held the entity to which an insured delivered documents pertaining to a lawsuit was an apparent agent for the receipt of claim information, and the insurer was estopped to deny the agency relationship. Also, on the basis of the same type of evidence, the court in *American Home Assurance Co.* held an insurance broker was an insurer's agent for the limited purpose of accepting notices of claims. We hold the evidence in this case presents a genuine issue of material fact as to whether BIMA was Great Central's agent or apparent agent for the purpose of accepting proofs of loss and documents relating to lawsuits against Great Central's insureds.

As Great Central points out, the insurance policies involved in *Empire* and *American Home Assurance Co.* provided, unlike the policy at issue in the case at bar, that notices of lawsuits had to be presented to the insurer or its agent. In those cases, however, notice of a pending lawsuit was not given to a duly authorized agent within the

meaning of the policy language. Thus in those cases, as in the present case, the crucial question was whether the facts supported a conclusion that an entity, other than an agent designated in the insurance policy, was an agent of the insurer for the purpose of accepting notice or documentation of claims or lawsuits against its insureds.

Also, as Great Central observes, the principal is the source of an agent's power, and the agent's authority may only be established by tracing it to some word or act of the alleged principal. (*E.g.*, *Fredrich v. Wolf* (1943), 383 Ill. 638, 50 N.E.2d 755.) However, a trier of fact could reasonably find that Great Central's acceptance of documents and information pertaining to losses delivered to it by BIMA amounted to conduct sufficient to cloak BIMA with at least apparent authority to accept proofs of loss and documentation with respect to lawsuits on Great Central's behalf. If Great Central did not wish to accept proofs of loss and lawsuit documentation through BIMA, it could easily have indicated this position by returning all such materials submitted to it in this manner and requesting that the materials be resubmitted in the proper manner.

The cases on which Great Central principally relies do not support a finding summary judgment was properly entered as to Long's second-amended count III. In *Ledbetter v. Crudup* (1983), 114 Ill. App. 3d 401, 449 N.E.2d 265, there was simply no evidence, such as that present in the case at bar, that insureds regularly submitted materials pertaining to claims to the insurer through agents. The court distinguished *American Home Assurance Co.* on the basis of the statements of an employee of the insurer involved in that case with regard to the insurer's course of dealings with an insurance broker. The court in *American Home Assurance Co.* found the broker was the insurer's agent for the limited purpose of accepting service of notices of claims.

In *Lynn v. Village of West City* (1976), 36 Ill. App. 3d 561, 345 N.E.2d 172, the emphasis was on the distinction between an insurance broker (who acts on behalf of the purchasers of insurance policies) and an insurance agent (who acts on behalf of the insurance companies which he represents). The court concluded an individual to whom a summons in a lawsuit against an insured was delivered was a broker as opposed to an agent of the insurer and thus could not be deemed the insurer's agent for purposes of receiving notices of lawsuits against its insureds. In reaching this conclusion, the court noted the person it held to be a broker had no fixed and permanent relationship with the insurer. In the present case, by contrast, Great Central had a fixed agency relationship with BIMA.

Finally, *Clapp v. JMK/Skewer, Inc.* (1985), 137 Ill. App. 3d 469, 484 N.E.2d 918, involved claims for damages based on the serving of spoiled food at a restaurant located in a shopping mall. The plaintiffs sought to impose liability for their injuries on the shopping mall based on their claim, among others, that the restaurant was the agent of the shopping mall. The court noted that although one aspect of agency is the right of the principal to control the agent's actions, in a true agency relationship, the agent's function is to carry out the principal's affairs. The court held the plaintiffs could have no cause of action against the mall based on an agency relationship because there was nothing to suggest the restaurant's relationship with the mall involved its tending to the mall's affairs.

*Clapp* thus stands for the rule that a principal has the right to control its agent's actions but does not necessarily have to exercise its right of control in order for there to be an agency relationship. The most significant indicia of an agency relationship is the agent tending to the principal's affairs with the principal's acquiescence. In the present case, there is sufficient evidence BIMA, with Great Central's approval, tended to the handling of materials relating to claims against Great Central's insureds to at least create a question of fact as to whether the relationship of apparent agency existed between BIMA and Great Central with regard to this matter.

In count IV of Long's complaint, it is alleged: (1) Long delivered the complaint and summons in Gipson's lawsuit against him to BIMA upon his receiving them on March 19, 1989, with a request "for an appropriate defense"; (2) no appearance was entered on his behalf; and (3) a default judgment was entered against him. In count IV, Long further alleged Great Central, through its claims representative, was aware of Gipson's claim against Long, conducted an investigation of the claim, and communicated with the attorney for the Gipson estate. Long asserted, "Great Central Insurance Company was aware or possessed in its files information that should have disclosed to it, that suit had in fact been filed against its insured, Jess Long, giving rise to their duty of defense." Count IV concludes with an allegation that Great Central's failure to provide a defense was a proximate cause of the default judgment entered against Long, as well as of Long's incurring various attorney fees.

Long argues the circuit court improperly dismissed count IV because it alleges Great Central had information sufficient to make it aware he had been sued. Long maintains in view of Great Central's allegedly having actual notice of Gipson's lawsuit against him, it was not necessary he forward the summons or complaint in that lawsuit to

Great Central in order to create a duty on its part to defend the suit on his behalf.

Great Central argues count IV does not state a cause of action because it contains no allegation of a request for defense or a tender of defense of Gipson's lawsuit against Long. Great Central contends all of the following events are required in order to trigger a duty to defend a lawsuit on the part of an insurer: (1) notice of the suit, (2) a tender or request for defense of the suit, and (3) a comparison of the suit allegations to the policy coverages in order to determine if the suit is potentially within the coverage of the policy. Great Central contends that prior to tender of the summons and complaint to the insurer and absent an express request for defense of a lawsuit, an insurer has no duty to act. Great Central suggests an insurer defending a lawsuit against one of its insureds without the insured having properly tendered defense of the suit would render the insurer an intermeddler in the affairs of others.

Also, Great Central argues that a holding that mere knowledge that a lawsuit has been filed against one of its insureds requires an insurer to appear and defend the suit would obligate insurers to appear and defend any lawsuits filed against their insureds, "regardless of the cause of action, the theory, the damages sought or the policy provisions regarding the extent of coverage." Great Central concludes since count IV does not allege a proper tender to it of the defense of Gipson's lawsuit against Long, it does not state a cause of action.

■ A count of a complaint should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. (*Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 466 N.E.2d 224.) In order to survive a motion to dismiss, a count must allege facts which, when considered together, establish and substantiate the cause of action which plaintiff seeks to state. *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 430 N.E.2d 976.

■ "It is accepted in Illinois that an insured's failure to forward to his insurer process received by him does not preclude recovery on the policy where the insurer has 'actual notice' of suit." (*Olivieri v. Coronet Insurance Co.* (1987), 173 Ill. App. 3d 867, 872, 528 N.E.2d 986, 989, citing *Johnson v. Samuels* (1963), 40 Ill. App. 2d 417, 420, 189 N.E.2d 780, 781.) "Actual notice" means notice sufficient to permit the insurer to locate the suit and defend it. (*Keepers v. Powell* (1971), 131 Ill. App. 2d 423, 268 N.E.2d 488; *Johnson*, 40 Ill. App. 2d 417, 189 N.E.2d 780.) In the present case, Great Central's communications with the attorney for the Gipson estate, if such actually occurred, along with its alleged investigation of Gipson's claim

against Long, would provide a basis for holding Great Central had sufficient information concerning Gipson's lawsuit against Long to permit it to locate and defend the suit. In view of this alleged knowledge on the part of Great Central, Long's failure to forward the summons and complaint to Great Central would be immaterial with respect to the existence of a right on his part to recover under the policy.

The cases cited by Great Central do not support the circuit court's dismissal of count IV. Neither *Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469, 430 N.E.2d 1104, nor *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24, involved questions as to whether an insurer received proper notice of a lawsuit against one of its insureds. In *Oda v. Highway Insurance Co.* (1963), 44 Ill. App. 2d 235, 194 N.E.2d 489, which Great Central cites in support of its contention insurers defending lawsuits absent a tender of defense renders them intermeddlers in the affairs of others, the statement relied upon by Great Central was made in the context of a discussion of whether an insurer has a duty to engage in negotiations for a settlement in excess of policy limits, where it is apparent the claims cannot be settled within the policy limits. The court held an insurer engaging in such settlement negotiations would amount to its furnishing services beyond its contractual obligations and becoming " 'an intermeddler in the contests of others.' " *Oda*, 44 Ill. App. 2d at 253, 194 N.E.2d at 499.

*Hartford Accident & Indemnity Co. v. Gulf Insurance Co.* (7th Cir. 1985), 776 F.2d 1380, did involve a question as to whether an insured, which was a large municipality, had properly tendered the defense of a lawsuit to the insurer which, the municipality contended, had a duty to defend the suit. The court concluded the municipality did not properly tender the defense of the suit. In reaching this conclusion, the court emphasized the party which asserted a duty to defend was a large municipality:

> "Here the insured is a large and sophisticated governmental entity that is advised and assisted by its own counsel, who is a City official. While we need not decide what the appropriate procedure for tender, if any, should be for unschooled laymen (who may be excused from any sort of active tender), clearly tender by a sophisticated city requires something more than a letter from a rival insurance company 10 months after the process of litigation has begun." (*Hartford Accident & Indemnity*, 776 F.2d at 1383.)

In the present case, there is nothing to indicate Long was other than

an "unschooled layman" who was not obligated to make an active tender to Great Central of the defense of Gipson's lawsuit against him.

Because this cause must be remanded for further proceedings, we must consider whether the circuit court properly dismissed BIMA's first affirmative defense to Great Central's third-party complaint against BIMA. The gravamen of this pleading is that Great Central should have mitigated its damages by requesting vacation of the default judgment against Long pursuant to section 2—1401 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401) on the basis of a purported meritorious defense which Long had to Gipson's lawsuit.

We agree with BIMA the circuit court should not have dismissed its affirmative defense. It is well established a plaintiff has a duty to mitigate its losses. This duty applies to virtually every type of case in which a money judgment or award may be recovered. (*Kelly v. Chicago Park District* (1951), 409 Ill. 91, 98 N.E.2d 738; *Pagel v. Yates* (1984), 128 Ill. App. 3d 897, 471 N.E.2d 946.) BIMA's allegations of Great Central's failure to pursue a means available to it of vacating the default judgment against Long, if true, would be sufficient to establish Great Central did not mitigate its damages stemming from entry of the default judgment against Long.

BIMA's notice of cross-appeal refers only to the circuit court's April 5, 1988, order which dismissed its first affirmative defense to Great Central's third-party action. It makes no reference to the denial of BIMA's motion for recusal of Long's counsel or to the dismissal of BIMA's cross-claim against Long. In order to confer jurisdiction on a reviewing court, a notice of appeal must "specify the judgment or part thereof appealed from." (107 Ill. 2d R. 303(c)(2).) Although notices of appeal are to be liberally construed (*Dillman & Associates, Inc. v. Capitol Leasing Co.* (1982), 110 Ill. App. 3d 335, 442 N.E.2d 311), a notice of appeal from only a specified order generally does not confer jurisdiction on the reviewing court to review an order not specified in the notice of appeal unless the unspecified order "is a step in the procedural progression" to a later order which is specified in the notice of appeal. (*Moss v. Gibbons* (1989), 180 Ill. App. 3d 632, 640, 536 N.E.2d 125, 130; *Sterne v. Forrest* (1986), 145 Ill. App. 3d 268, 495 N.E.2d 1304.) Because BIMA's notice of appeal does not specifically mention the denial of its motion for recusal of Long's counsel or the dismissal of its cross-claim, and neither of those orders is a step in the progression to the dismissal of BIMA's affirmative defense, this court lacks jurisdiction to consider those two orders.

The orders of the circuit court which granted summary judgment as to second-amended count III of Long's complaint and dismissed

count IV of Long's complaint and BIMA's first affirmative defense to Great Central's third-party claim are reversed. This cause is remanded to the circuit court for further proceedings consistent with the views expressed herein. Great Central Insurance Company's motion to strike portion of plaintiff's brief allowed.

Reversed and remanded.

LUND and KNECHT, JJ., concur.