NO. 4-97-0488

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

KATHERINE RICE, ) Appeal from

Plaintiff-Appellant, ) Circuit Court of

v. ) Sangamon County

AAA AEROSTAR, INC., d/b/a ) No. 94L337

RALLY'S RESTAURANT, )

Defendant, ) 

and ) 

STATE FARM FIRE AND CASUALTY ) Honorable

COMPANY, ) Jeanne E. Scott,

Garnishee-Appellee. ) Judge Presiding.

JUSTICE COOK delivered the opinion of the court:

This case presents the question whether an insurance company can avoid payment of a claim because it was not given notice that suit had been filed, although it was given notice of the occurrence.  We re­ject plaintiff's argu­ment that the insurer's aware­ness of the poten­tial for law­suit gave the insurer notice suffi­cient for it to locate and defend the suit.  Never­theless, we reverse the summary judgment entered for the insurer, because the insurer's affidavit did not negate the pos­sibility that the in­surer had actual no­tice.

On July 7, 1992, plain­tiff slipped and fell in a park­ing lot owned by defen­dant, AAA Aerostar, Inc., d/b/a Rally's Res­tau­rant.  At the time of the fall, plaintiff was 8½ months preg­nant.  Defendant's in­sur­er, State Farm Fire and Casualty Company (State Farm), was notified of the inci­dent.  In August 1992, State Farm ad­vised plain­tiff that for a period of one year

all rea­son­able medi­cal expens­es were cov­ered under the medical payments provisions of defendant's in­sur­ance poli­cy.  In Septem­ber 1992, plain­tiff re­tained Florence L. Bain to prose­cute a personal inju­ry claim against defendant.  State Farm in­vestigated the claim and, during the interim, paid ap­proxi­mately $4,375 in medi­cal ex­pens­es.  

In March 1993, upon completing its investigation, State Farm denied liability on the part of defendant.  In response to State Farm's deni­al, Bain wrote State Farm a letter outlining plaintiff's potential legal claim and offer­ing set­tle­ment terms.  In Sep­tem­ber 1993, State Farm took plaintiff's statement regard­ing the inci­dent.  State Farm again denied liability.  In a sta­tus report dated De­cem­ber 1993, State Farm's claim rep­resen­ta­tive, Pamela Woodson, noted that the only work re­main­ing on the claim was defending a po­ten­tial law­suit.  How­ev­er, in January 1994, State Farm closed its file because plaintiff had not yet filed suit.  The two-year statute of limitations would run July 7, 1994.  See 735 ILCS 5/13-202 (West 1992).

In early 1994, State Farm was contacted by plain­tiff's sec­ond at­torney, Patricia Hayes.  Hayes, via a representa­tion let­ter, ad­vised State Farm she was now repre­senting plain­tiff and had a lien on all money recovered by suit, settle­ment or oth­er­wise.  Once again, State Farm denied liability, and after nu­mer­ous at­tempts to con­tact Hayes, State Farm again closed the file, in February 1994.  In June 1994, Hayes, on plaintiff's be­half, filed a com­plaint against de­fendant for neg­li­gence.  In De­cem­ber 1994, the trial court en­tered a de­fault judg­ment against de­fen­dant.  In September 1995, the court entered a final order award­ing plaintiff $48,500 plus costs.  

At some point prior to the entry of judg­ment de­fen­dant filed bank­rupt­cy, there­by pre­vent­ing plain­tiff from col­lect­ing from defendant on the judg­ment.  In January 1996, plain­tiff sought to gar­nish defendant's in­sur­ance fund.  In Feb­ruary 1996, State Farm moved for summary judgment pursu­ant to section 2-1005 of the Illinois Code of Civil Proce­dure (735 ILCS 5/2-1005 (West 1994)).  State Farm argued its policy re­quired writ­ten no­tice of all law­suits filed against its insured.  Be­cause nei­ther its insured nor plain­tiff noti­fied State Farm of the law­suit, the policy was breached and plaintiff could not col­lec­t from the insurance fund.  In April 1996, State Farm re­quest­ed plaintiff admit she and her attorney failed to notify State Farm of the suit.  The request to admit went unan­swered.  

In July 1996, Hayes with­drew from the case.  Sub­se­quently, anoth­er attor­ney ap­peared on behalf of plain­tiff and later withdrew.  In Janu­ary 1997, plain­tiff, via her fourth at­tor­ney, responded to State Farm's request and admit­ted she never con­tact­ed State Farm re­gard­ing the law­suit; howev­er, she was uncer­tain whether Hayes or Hayes' asso­ci­ates con­tact­ed State Farm.  In conjunc­tion with the admis­sion, the court granted plaintiff leave to re­spond to State Farm's sum­ma­ry judg­ment mo­tion.  

In February 1997, State Farm took Hayes' depo­si­tion.  In her deposition, Hayes admitted she never advised State Farm of the law­suit filed against defendant and she was un­sure whether anyone in her of­fice con­tacted State Farm.  Addi­tionally, her re­cords did not indi­cate wheth­er State Farm was ever notified of the lawsuit.  State Farm of­fered plaintiff's ad­mis­sions and Hayes' depo­si­tion as evidence support­ing its sum­mary judgment motion.  State Farm also sub­mit­ted in­ter­roga­to­ries an­swered by Mi­chael Beaman, a State Farm claim su­per­visor, and an affida­vit, signed by Beaman, out­lin­ing State Farm's knowl­edge of the law­suit.  The affi­da­vit stat­ed State Farm "was not in­formed by [p]laintiff, [p]laintiff's attor­ney, any repre­senta­tive of [p]laintiff or any entity that [defen­dant] had been served with summons" for the lawsuit.  In a simi­lar fashion, Beaman's affida­vit also denied State Farm was informed of the mo­tion for de­fault judgment, the hear­ing on the mo­tion for de­fault judg­ment, the motion to set damag­es, or the hearing to set damag­es.  Beaman's interrogatories de­nied State Farm re­ceived a copy of plaintiff's com­plaint against de­fen­dant.

In response to State Farm's mo­tion, plain­tiff ar­gued State Farm had actual notice of the lawsuit via set­tlement nego­ti­ations con­duct­ed prior to suit being filed.  Plain­tiff relied on written state­ments made by Woodson, the claim represen­ta­tive, as evidence that State Farm had knowl­edge of the law­suit.  Woodson's reports stat­ed plain­tiff was threat­en­ing to file suit and a law­suit was pos­si­ble; therefore, plaintiff ar­gued State Farm was aware of the poten­tial for a law­suit and should have checked with plain­tiff, defen­dant, or the clerk of the court to de­ter­mine whether the suit had been filed.  In May 1997, the court granted State Farm's motion for sum­mary judg­ment.  Plain­tiff appeals.

In ruling upon a summary judg­ment motion, the evidence is re­viewed 
de
 
novo
 and con­strued in the light most fa­vor­able to the nonmovant.  See
 
Walk­er v. Rogers
, 272 Ill. App. 3d 86, 89, 650 N.E.2d 272, 274 (1995), citing 
Gilbert v. Syca­more Municipal Hospi­tal
, 156 Ill. 2d 511, 518, 622 N.E.2d 788, 792 (1993).  Sum­ma­ry judg­ment is prop­er­ly en­tered when the pleadings, depo­si­tions, ad­mis­sions, and affi­da­vits fail to estab­lish a gen­u­ine issue of mate­rial fact, thereby enti­tling the mov­ant to judg­ment as a matter of law.  735 ILCS 5/2-1005(c) (West 1994).
  
The mov­ant may be granted sum­ma­ry judg­ment in two instances: (1) when the mov­ant af­fir­ma­tive­ly dis­proves the nonmovant's case by in­tro­duc­ing evi­dence that, if un­con­tro­verted, would enti­tle the movant to judg­ment as a matter of law (see 
Putrill v. Hess
, 111 Ill. 2d 229, 240-41, 489 N.E.2d 867, 871 (1986)), or (2) when the mov­ant can es­tab­lish the nonmovant lacks suf­fi­cient evi­dence to prove an es­sen­tial element of the cause of action (see 
Celotex Corp. v. Catrett
, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 273, 106 S. Ct. 2548, 2552 (1986); 
Kimbrough v. Jewel Cos.
, 92 Ill. App. 3d 813, 817, 416 N.E.2d 328, 331 (1981)).  See also 
4 R. Mi­chael, Illi­nois Prac­tice §40.3, at 271-72 (1989) (Civil Proce­dure Be­fore Tri­al).

In this case, State Farm, via its mo­tion for sum­mary judg­ment, at­tempt­s to af­firma­tively disprove plaintiff's case by establishing it never re­ceived notice of the law­suit against its in­sured.  As the mov­ant, State Farm bears the bur­den of per­sua­sion and the initial burden of produc­tion.  See 
Carruthers v. B.C. Chris­to­pher & Co.
, 57 Ill. 2d 376, 380, 313 N.E.2d 457, 459 (1974).  Only if State Farm sat­is­fies its ini­tial burden of pro­duction does the burden shift to plain­tiff to pres­ent some fac­tual basis that would argu­ably enti­tle her to a fa­vorable judg­ment.  See 
Carruthers
, 57 Ill. 2d at 380, 313 N.E.2d at 459; 
Bank of Waukegan v. Epilepsy Foundation of America
, 163 Ill. App. 3d 901, 906, 516 N.E.2d 1337, 1340 (1987).  Plain­tiff is generally not re­quired to file counteraffidavits or deposi­tions in re­sponse to State Farm's sum­ma­ry judg­ment motion, but well-plead­ed facts set forth in State Farm's affidavit must then be ac­cept­ed as true.  See 
Carruthers
, 57 Ill. 2d at 381, 313 N.E.2d at 460; 
Lappin v. Costello
, 232 Ill. App. 3d 1033, 1040, 598 N.E.2d 311, 316 (1992).  

Defendant's in­sur­ance poli­cy re­quires that State Farm receive writ­ten notice of any legal ac­tions brought against it.  The policy states the following:

"3. Duties in the [e]vent of [o]ccurrence,

[c]laim or [s]uit.

a. You must see to it that we are

noti­fied promptly of an occur-

rence that may re­sult in a claim.  

Notice should include:

(1) how, when and where the 

oc­currence took place; and

(2) the names and addresses of

any injured persons and

wit­nesses.

b. If a claim is made or suit is 

brought against any insured, you 

must see to it that we receive 

prompt written notice of the

claim or suit.

c. You and any other involved insured

must:

(1) imme­diately send us copies of 

any demands, notices, sum-

monses or legal papers re-

ceived in connection with the

claim or suit;

(2) au­thorize us to obtain records

and other information;

(3) coop­erate with us in the in-

vestigation, settlement or 

de­fense of the claim or suit;

and

(4) as­sist us, upon our request, 

in the enforcement of any 

right against any person or

orga­nization that may be 

lia­ble to the insured because

of injury or damage to which

this insurance may also apply.

d. Except at their own cost, no in-

sureds will voluntarily make a pay-

ment, assume any obligation or incur

any ex­pense, other than for first

aid, with­out our consent."

State Farm argues the policy was breached because it was never notified of the lawsuit; therefore, plaintiff may not gar­nish the insurance fund.

Gen­eral­ly, in gar­nish­ment pro­ceed­ings, a judg­ment cred­itor may only collect from the insur­ance company if the in­sured could have enforced the insurance poli­cy.  
Reisman v. Delgado
, 117 Ill. App. 3d 331, 333-34, 453 N.E.2d 902, 904 (1983); 
Hunter Manufac­turing, Inc. v. Hines
, 76 Ill. App. 3d 664, 665, 395 N.E.2d 186, 187 (1979).  An insured's breach of the in­sur­ance poli­cy general­ly pro­hib­its the judg­ment creditor from gar­nish­ing the in­sur­ance fund.  See 
Reisman
, 117 Ill. App. 3d at 334, 453 N.E.2d at 904; 
John­son v. R&D En­ter­pris­es
, 106 Ill. App. 3d 496, 500-02, 435 N.E.2d 1233, 1236-37 (1982); 
cf
. 
Pawlik v. Nichols
, 195 F. Supp. 735, 742 (E.D. Ill. 1961); 
Sandoval v. Chenoweth
, 102 Ariz. 241, 245, 428 P.2d 98, 102 (1967).  The rationale is to pre­vent the in­sur­ance com­pa­ny from being sub­stan­tially preju­diced by a judg­ment entered against its in­sured with­out opportu­nity to ap­pear and de­fend the in­sured.  8 J. Appleman & J. Appleman, In­sur­ance Law & Prac­tice §4816, at 383 (1981); see gen­er­ally 
M.F.A. Mutu­al In­sur­ance Co. v. Cheek
, 66 Ill. 2d 492, 500, 363 N.E.2d 809, 813 (1977).  

Not every breach of a policy condition by the insured will allow the insurer to avoid payment under the policy.  The law is also con­cerned with the rights of the public, espe­cial­ly where the insurance coverage is mandated by statute.  See 
John­son
, 106 Ill. App. 3d at 501, 435 N.E.2d at 1236.  After the cause of action has accrued to an injured person, the parties to the insurance contract cannot by any re­lease, agree­ment, or col­lusion destroy the right of the injured person to indemnity.  7A Am. Jur. 2d 
Automobile
 
Insurance
 §§581-82 (1997).  A concern for the pub­lic, beyond the rights of the in­sured who has paid for the poli­cy, is found in section 388 of the Illinois Insur­ance Code, which mandates that insolvency or bank­rupt­cy of the insured shall not release the company from payment to the injured party.  215 ILCS 5/388 (West 1992).

Despite the language of its policy, State Farm need not re­ceive "written notice of the claim or suit" from its insured.  Nor is it nec­es­sary that State Farm receive "copies of any de­mands, notic­es, summonses, or legal papers received in connection with the claim or suit."  State Farm may still be lia­ble for the judg­ment if it had "actual no­tice" of the law­suit.  See 
Long v. Great Cen­tral In­sur­ance Co.
, 190 Ill. App. 3d 159, 168, 546 N.E.2d 739, 744 (1989); 
Olivieri v. Coronet Insur­ance Co.
, 173 Ill. App. 3d 867, 872, 528 N.E.2d 986, 989 (1987) (plaintiff's counsel sent insur­er a copy of the complaint and summons at the time of fil­ing).  "Actual notice" means notice sufficient for the insurer to locate and defend the suit.  
Long
, 190 Ill. App. 3d at 168, 546 N.E.2d at 744; 
Keepers v. Powell
, 131 Ill. App. 2d 423, 427, 268 N.E.2d 488, 491 (1971).

There are differences between the notice of an oc­cur­rence and notice that a suit has been filed.  The purpose of notice of the occurrence is to enable the insurer to conduct a timely and thorough investigation of the insured's claim, while
 the purpose of notice of the lawsuit is to enable the insurer to locate and defend the suit.  
Kerr v. Illi­nois Central R.R. Co.
, 283 Ill. App. 3d 574, 585, 670 N.E.2d 759, 767 (1996) (notice of oc­currence).  In the present case State Farm was able to conduct a timely and thorough investigation of the insured's claim, be­cause it had notice of the occurrence.  

There is some uncertainty in the cases whether preju­dice to the insurer must be shown be­fore it is relieved of its duty to indem­nify.  See 
General Casu­alty Co. v. Juhl
, 283 Ill. App. 3d 376, 382, 669 N.E.2d 1211, 1215 (1996) (damage is inher­ent in such a situa­tion); 
University of Illinois v. Con­ti­nental Casualty Co.
, 234 Ill. App. 3d 340, 364, 599 N.E.2d 1338, 1355 (1992) (when insured fails to comply with prompt no­tice require­ment, insurer may deny liability regardless of whether it has been prejudiced by delay); 
Millers Mutual Insurance Ass'n v. Gra­ham Oil Co.
, 282 Ill. App. 3d 129, 141, 668 N.E.2d 223, 232 (1996) (absence of actual prejudice to insurer is not conclu­sive, but is a factor to be considered).  Those cases, however, are all notice-of-occur­rence cases.  When notice of the lawsuit is the issue, the rule is that the insurer is required to show that it was prejudiced by the insured's omis­sion or delay in order to escape liability on its policy.  See Annotation, 
Modern Status of Rules Requiring Liabil­ity Insurer to Show Prejudice to Escape Liability Because of Insured's Failure or Delay in Giving Notice of Acci­dent or Claim, or in Forwarding Suit Papers
, 
32 A.L.R.4th 141, 145 (1984). 

Plain­tiff con­tends State Farm had actu­al no­tice of the law­suit via state­ments made to Woodson threat­ening a law­suit.  Howev­er, mere state­ments threat­ening the pos­si­bil­ity of suit are not ­suf­fi­cient for "ac­tu­al no­tice" pur­poses.  See 
John­son v. Samuels
, 40 Ill. App. 2d 417, 419-20, 189 N.E.2d 780, 781-82 (1963).  The threats plain­tiff relies on were made during settle­ment nego­tia­tions conducted approximately one year prior to suit being filed.  Dur­ing the interim period, plaintiff's attor­ney(s) never expressly noti­fied State Farm of the po­ten­tial suit.  In fact, State Farm closed plaintiff's file twice due to her attorney's failure to respond to State Farm's in­qui­ries.  Based on these facts, we are unwill­ing to place any burden on State Farm to determine wheth­er suit had been filed.  We need not con­sider what the re­sult might have been if plaintiff's attorney had noti­fied State Farm, shortly before it was done, that suit was about to be filed.

Hayes could have done a number of things to pre­serve plaintiff's right to gar­nish the insurance fund:  (1) docu­ment a tele­phone call to State Farm ad­vis­ing it of the law­suit, (2) send a let­ter to State Farm ad­vis­ing it of the law­suit (see 
Greg­ory v. Highway Insur­ance Co.
, 24 Ill. App. 2d 285, 297, 164 N.E.2d 297, 303 (1960)); ­or (3) for­ward a copy of the com­plaint and/or sum­mons to State Farm (see 
Olivieri
, 
173 Ill. App. 3d at 871-72, 528 N.E.2d at 989).  Wheth­er these alter­na­tives would have pro­vided reason­able notice is a question of fact (see 
Olivieri
, 173 Ill. App. 3d at 872, 528 N.E.2d at 989), but any one of them would have pro­vid­ed plain­tiff with sufficient evi­dence to sur­vive State Farm's motion for sum­ma­ry judgment.  In some cases notice of suit even after a default is entered might enable the insurer to sat­is­fac­to­rily defend the suit, if the insurer would be able to per­suade the court to vacate the default. 

Although we reject plaintiff's argument that plaintiff's actions gave adequate notice of suit, State Farm's affi­davit is in­suf­fi­cient to per­mit summary judgment.  Beaman's affi­davit indi­cates State Farm "was not in­formed by [p]laintiff, [p]laintiff's attor­ney, any repre­senta­tive of [p]laintiff or any entity that [defen­dant] had been served with" summons and all subsequent motions.  Beaman's affi­da­vit fails to ad­dress wheth­er State Farm was aware of the 
law­suit.
  Rather, the affi­davit states State Farm was not in­formed by any entity, in­cluding plain­tiff or her attorney.  State Farm may have dis­cov­ered the law­suit in any number of ways, yet not have been "in­formed" by any enti­ty.  Such discov­ery may have provided State Farm with suf­fi­cient notice to locate and defend the law­suit.  Thus, State Farm's affidavit fails to negate wheth­er it received "ac­tu­al no­tice."  Our deci­sion may appear tech­ni­cal; how­ev­er, sum­mary judg­ment is a dras­tic means of dis­pos­ing of a case and the evi­dence is strictly con­strued against the mov­ant.  See 
Gil­bert
, 156 Ill. 2d at 518, 622 N.E.2d at 792.  State Farm may pro­vide addi­tion­al evi­dence con­sis­tent with this opinion and resub­mit the mo­tion for sum­ma­ry judg­ment to the trial court.  

Due to the insufficiency of State Farm's affidavit, we reverse and remand.

Reversed and remanded.

STEIGMANN and McCULLOUGH, JJ., concur­.