ANTHONY PASQUINELLI *et al.*, Plaintiffs and Counterdefendants-Appellees, v. THE VILLAGE OF MUNDELEIN, Defendant and Counterplaintiff-Appellant.

Second District   Nos. 2—92—1280, 2—93—0945 cons.

Opinion filed February 4, 1994.

Charles F. Marino and David M. Marino, both of Chicago, for appellant.

Donald J. Kreger and Ruth E. Krugly, both of Schiff, Hardin & Waite, of Chicago, and Murray R. Conzelman, of Conzelman, Snarski & Stepanich, of Waukegan, for appellees.

JUSTICE DOYLE delivered the opinion of the court:

The dispute in this case centers on the ownership of a sewer line extension located near the Village of Mundelein. This consolidated appeal comes before the court following the circuit court's entry of an order permanently enjoining defendant, the Village of Mundelein, from exercising control over, or permitting any party to connect to the sewer line extension, until such time that it acquires title to the sewer line extension from plaintiffs, Anthony Pasquinelli, Bruno Pas-

quinelli, and Melvin Isenstein. Prior to consolidation, defendant brought a timely interlocutory appeal (see 134 Ill. 2d R. 307) challenging the circuit court's entry of an order preliminarily enjoining defendant from taking any action permitting any party to connect to the sewer line unless and until defendant acquired title to the sewer line. During the pendency of defendant's interlocutory appeal, plaintiffs' cause proceeded to trial, resulting in an order of permanent injunctive relief. Defendant timely appealed from that order, and its motion to consolidate was granted.

In its appeal from the order of preliminary injunctive relief, defendant, in case No. 2—92—1280, raises the following issues: (1) whether the trial court erred by ignoring the uncontested facts showing defendant's ownership and control of a sewer line extension, subject to plaintiffs' right to recapture a portion of the cost thereof from other property owners connecting thereto; and (2) whether the trial court erred in failing to hold an evidentiary hearing on contested issues of fact regarding defendant's ownership and control of the sewer line extension before granting the preliminary injunction.

In case No. 2—93—0945, defendant's appeal from the order of permanent injunctive relief, the following issues are raised: (1) whether the trial court "confused" ownership and control with title; (2) whether plaintiffs relinquished ownership and control of the sewer line extension by installing it in five village-owned easements and otherwise treating it as an extension of the village's sanitary sewer system; and (3) whether plaintiffs bound themselves to accept recapture fees as provided in an unsigned recapture agreement.

The record reveals the following relevant facts. In 1989, the Pasquinelli Construction Company, at plaintiffs' direction, constructed, at an estimated cost of $1.1 million to $1.2 million, a sewer line extension to serve an undeveloped tract of land commonly known as the Brott property, which was owned by plaintiffs, and other properties located within and outside the corporate limits of the Village of Mundelein. It was undisputed that plaintiffs would not be ultimately responsible for the entire cost of construction and that the village and plaintiffs would enter into a recapture agreement. In very general terms, a recapture agreement allows a developer to recoup costs for infrastructure improvements which exceed the developer's own requirements for a particular project. See 65 ILCS 5/9—5—1 (West 1992).

Prior to the installation of the sewer line extension, Lawrence Freedman, an attorney representing plaintiffs, attended various meetings late in 1987 or early in 1988 with village officials to discuss the sizing of the sewer line. During those meetings, it was determined

that the line should be sized so as to adequately service the Brott property, other properties located within the village limits of Mundelein, and properties, like the Brott property, which were anticipated to annex into the village.

The parties further contemplated the execution of a recapture agreement. At its July 23, 1988, meeting, the village board of Mundelein passed a resolution authorizing the mayor and village clerk to execute a recapture agreement with Pasquinelli Construction Company, subject to any revisions made by the village staff and approved by the village attorney.

In addition to the recapture agreement, Freedman was negotiating an annexation agreement regarding the Brott property. Freedman testified that all of the annexation agreement drafts contemplated a prior or contemporaneous execution of a recapture agreement. He further testified, however, that during the years since the parties began negotiating annexation, defendant's requirements with respect to fees, donations, and contributions that would be imposed on any property annexing into the village, including the Brott property, increased significantly. Accordingly, the potential cost of development in the village was far in excess of the amount originally contemplated. His clients, therefore, were of the opinion that, in the absence of some relief, annexation would make development in the village economically infeasible. The parties ultimately never reached an agreement on annexation of the Brott property.

During the course of negotiations, several discussion drafts of the recapture agreement were circulated between the parties. Four draft versions of the recapture agreements were admitted in evidence. The first and second draft versions were dated June 30, 1988, and July 15, 1988, respectively. The third and fourth versions were dated January 8, 1992, and March 24, 1992, respectively. None of the four versions were signed by either of the respective parties.

Additionally, contained in the recitals of all four drafts was an express reference to exhibit "B," wherein the properties to be benefitted, other than the developer's, from the installation of the sanitary sewer system were to be depicted and enumerated. None of the four draft versions contained a completed exhibit "B." Kenneth Marabella, administrator for the Village of Mundelein, acknowledged that the recapture agreements were never signed and that the exhibits to the agreements were never filled in. He further admitted that the agreed-on benefitted area was not set forth in a signed document and that the actual benefitted area had not been agreed on as of October 1992.

All of the drafts further contemplated that the conveyance of the

utilities to defendant would be by a bill of sale. Marabella admitted that defendant never received a bill of sale for the sewer line extension or received any document transferring ownership.

In addition to the annexation and recapture agreement negotiations, defendant and Pasquinelli Construction participated together in obtaining certain regulatory approvals related to the installation of the sewer line extension. The parties jointly executed an Illinois Environmental Protection Agency application for permit or construction approval of a public sewer line extension. The application, dated December 20, 1988, designated defendant and Pasquinelli Construction as "the applicant to own and operate." In a section entitled "Certificate by Intermediate Sewer Owner," the application designated the Village of Mundelein as the system owner to which the sewer line extension would be a tributary. This permit was ultimately issued, and it designated the Village of Mundelein as the permittee to own and operate the sewer line extension and Pasquinelli as the permittee to construct.

The Lake County division of transportation issued a highway permit, dated June 9, 1989, authorizing the installation of the sewer line extension in the Midlothian Road right-of-way. The permit charges the Village of Mundelein with the responsibility for the operation and maintenance of the sewer line extension.

Additionally, at its June 10, 1989, meeting, the village board of trustees accepted five utility easement agreements for the sewer line extension, subject to attorney review. The easement agreements were subsequently recorded with the Lake County recorder of deeds.

Prior to commencing construction in 1989, plaintiffs sold another tract of undeveloped land located near the Brott property (Halpern/Ambria) to the Meister Group. As a part of their sales agreement, plaintiffs agreed, subject to the village's permission, that the Meister Group could connect at no cost to the sewer line extension. Following the sale of the property to Meister, plaintiffs began the construction of the sewer line extension, and it was completed in November 1989. Inspections followed, and the sewer line extension was placed into operation in September 1990 when homes located in the Ambria subdivision began draining into the interceptor sewer.

Approximately two years later, plaintiffs filed a verified complaint for declaratory and injunctive relief, seeking to enjoin defendant from taking the sewer line without due process of law and a declaration that defendant had no right to exercise control over or permit any party to connect to the sewer line without plaintiffs' consent, unless and until defendant acquired title to the sewer line extension. In its verified answer, defendant denied plaintiffs'

ownership of the sewer line extension and alleged that the sewer line extension was a part of its sanitary sewage system since the completion of construction and that ownership of the line was "turned over" by Pasquinelli Construction to defendant on or about September 15, 1990.

Defendant averred further that neither plaintiffs nor Pasquinelli Construction had any ownership rights to the sewer line, except that Pasquinelli Construction was entitled to reimbursement for a portion of the construction and installation costs related to servicing 71 existing residences in the North Hills subdivision, and from other owners and developers of property currently within the Village of Mundelein and property subsequently annexed to the Village of Mundelein which connects to the sewer line extension. Additionally, defendant counterclaimed, seeking a declaration that defendant owned the sewer line extension and that the village had the right to permit connection to the sewer line by property owners in North Hills and others, subject to Pasquinelli's right to recapture its construction and installation costs.

Eleven days after filing their verified complaint, plaintiffs moved to enjoin preliminarily defendant from permitting any party to connect to the sewer line unless and until defendant acquired title to the sewer line. In its response, defendant asserted that plaintiffs' motion "could be referred to as a ruse." Defendant maintained that plaintiffs terminated discussions with the village on the possible annexation of the Brott property approximately three months earlier, and, according to defendant, "[n]ow, they are claiming to own the sewer and want to hold it hostage, with the help this [sic] Court, until they can coerce the Village into annexing the Brott property on the Plaintiffs' terms." The trial court granted plaintiffs' motion for preliminary injunction, and defendant appealed.

During the pendency of defendant's interlocutory appeal, the cause proceeded to trial on plaintiffs' complaint for permanent injunctive relief. In a written memorandum opinion, the trial court determined that plaintiffs held title to the sewer line and that the village had no right to exercise control over or to permit any party to connect to the sewer line unless and until it acquired title to the sewer line. Specifically, the court found the evidence clear that plaintiffs intended to convey the sewer line upon the completion of a final recapture agreement but no bill of sale was executed. The court further found that plaintiffs' intent relative to conveyance of the line was conditional, and as the conditions went unfulfilled, plaintiffs cannot be said to have intended that title pass to the village. Additionally, the court found that the sewer line was not real prop-

erty; however, even if the property were characterized as real, there was no written conveyance of title. Defendant appealed also from this order, and, as previously mentioned, its motion to consolidate was granted.

We will consider defendant's appeal from the trial court's grant of permanent injunctive relief first and then turn to its interlocutory appeal.

In its appeal from the order of permanent relief, defendant contends initially that the trial court confused "ownership and control" of the sewer line extension with "title" to the sewer line extension. Defendant maintains that "title" to the sewer line extension was never an issue in the case; therefore, the trial court erred in grounding its decision on considerations of title. The proper focus, according to defendant, was whether plaintiffs relinquished ownership and control of the sewer line extension. Plaintiffs respond that defendant's first contention amounts to an attempt to change on review the theory argued in the trial court. Accordingly, because the theory upon which a case is tried before the trial court cannot be changed on review (see *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147), plaintiffs maintain that defendant's first contention is waived. We agree for two reasons.

■ First, contrary to defendant's assertion, plaintiffs squarely raised the issue of title in the trial court. In their complaint for injunctive relief, plaintiffs expressly prayed for an order declaring that defendant had no right to exercise control or permit any party to connect to the sewer line extension "unless and until [defendant] has acquired title." Likewise, plaintiffs' motion for preliminary injunctive relief expressly prayed for an order enjoining defendant from taking actions related to the sewer line unless and until defendant acquired title to the line.

Second, our review of the record demonstrates that the legal distinction between "title" and "ownership and control" was not litigated below. Defendant's pleadings, motions, and other papers filed with the trial court do not evince an intention to raise the distinction as an issue. Additionally, our reading of the trial transcripts reveals that the presentation of the proofs was not directed to establishing an evidentiary basis for distinguishing title from ownership and control. Moreover, as plaintiffs correctly point out, defense counsel acknowledged at trial, when queried by the court, that the sole issue centered on title to the sewer line extension. Accordingly, we conclude that defendant has waived on review any issue relating to a distinction between title and ownership and control of the sewer line extension.

We further note parenthetically that defendant's reliance on *IMM Acceptance Corp. v. First National Bank & Trust Co.* (1986), 148 Ill. App. 3d 949, and *Reiman v. Kale* (1980), 83 Ill. App. 3d 773, is misplaced. In *IMM*, the court held that the Statute of Frauds was applicable to the transfer of a beneficial interest in an Illinois land trust. (*IMM Acceptance*, 148 Ill. App. 3d at 956.) In the present case, defendant raised no issue related to the application of Illinois land trust law, and the parties' relational structure suggests no application of land trust law.

In *Reiman*, the court addressed issues concerning statutory and common-law dedication and easements. In the present case, defendant raised no issue related to statutory or common-law dedication. Nor did defendant raise an easement issue similar to that in *Reiman*. Accordingly, we find *Reiman* inapposite to the circumstances of the present case.

Defendant contends next that the sewer line extension became part of the realty by installing it within five easements owned by defendant; therefore, according to defendant, it should be considered the owner of the line. Plaintiffs' response is threefold: (1) that defendant's theory should not be considered because defendant never pleaded this theory; (2) that, in any event, the mere fact that personalty is affixed to realty does not dispositively transform personalty into realty; and (3) that assuming, *arguendo*, the sewer line extension was a part of the realty, title to real estate can only be transferred by a writing.

■ In its verified third-party complaint against Pasquinelli Construction and its answer to plaintiffs' complaint, defendant clearly and unambiguously alleged that ownership of the sewer line extension was turned over to defendant on or about September 15, 1990. Although defendant introduced into evidence copies of the easement agreements, and indicated in its response to plaintiffs' motion for preliminary relief that construction of the sewer line extension in the easements demonstrated plaintiffs' intent to transfer ownership of the sewer line extension, defendant's verified pleadings did not allege that ownership changed at the time of installation, which occurred nine months before the alleged transfer date. It is well settled that issues in a case are created by the allegations in the pleadings, to which the proof must correspond, and a party cannot obtain relief based on proof without allegations. (*Eldridge v. Eldridge* (1993), 246 Ill. App. 3d 883, 891; *Associated Investment Corp. v. Laidlaw Waste Systems, Inc.* (1987), 152 Ill. App. 3d 279, 290.) Because defendant did not raise the issue in, or timely move to amend, its verified pleadings, the issue was never before the trial court for its

consideration. Accordingly, we decline to consider the issue because questions not raised in the trial court are deemed waived and may not be raised for the first time on appeal. See *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500.

Defendant further maintains, however, that because plaintiffs otherwise treated the sewer line extension as part of defendant's sanitary sewer system, plaintiffs relinquished ownership and control. Defendant argues that, among other things, Pasquinelli Construction Company's submission of plans to the village engineer for approval, its joint participation in procuring the environmental permit, its submission of bids to an independent engineering firm for review, its submission of payout requests to the village engineer, and its preparation and submission to the village of a booklet containing certified costs demonstrate that plaintiffs relinquished ownership and control of the sewer line extension. We are unpersuaded by defendant's argument for at least two reasons.

■ First, defendant cites no authority, analogous or otherwise, in support of its contention that the aforementioned activities were tantamount to a relinquishment of ownership and control. Second, these activities on their face appear to demonstrate no more than preparations necessary to ultimately transfer ownership of the sewer line extension. It was undisputed that plaintiffs intended ultimately to transfer ownership of the sewer line extension to defendant, subject to the execution of a mutually acceptable recapture agreement. The only question, therefore, which defendant's argument fails to address, was whether the transfer of ownership actually occurred.

Moreover, the record amply supports the trial court's conclusion that plaintiffs did not convey title to the sewer line extension to defendant. It was undisputed that plaintiffs installed and paid for the sewer line extension, that no bill of sale or any other document showing conveyance of title was executed, and that there was no signed final recapture agreement. Additionally, as pointed out by the trial court, none of the recapture agreement drafts were complete. For example, no version of the drafts contained a description (proposed exhibit "B") of the benefited area as required by statute. See 65 ILCS 5/9—5—1 (West 1992).

We are further unpersuaded by defendant's reliance on the easement grants, regulatory permits and applications, and village board approvals as indicia of the transfer of ownership. As plaintiffs point out, almost all of the documents and approvals were obtained or dated before the construction of the line and before September 15, 1990, the date which defendant alleged ownership was "turned over" to it.

Additionally, there is no evidence in the record to support the conclusion that the parties intended title to transfer once the sewer line became operational. The fact that plaintiffs, through a private agreement, permitted the Meister subdivision to connect to the sewer line extension, allegedly with the village's knowledge, does not, in the absence of evidence supporting such a claim, demonstrate that ownership transferred to the village. Moreover, although the village did operate and maintain the system following installation, defendant cites no authority to support the conclusion that operation and maintenance of the line were tantamount to a conveyance of title.

Finally, defendant contends that plaintiffs, through Pasquinelli Construction, bound themselves to accept the recapture fees provided for in the unsigned recapture agreement. Defendant argues that, the lack of signatures notwithstanding, the parties fully performed the contract as if they were bound. Plaintiffs respond that there has been no performance under the recapture agreement.

■ The record does not support the conclusion that plaintiffs fully performed. Plaintiffs received no payment of recapture fees. No bill of sale was executed, and the recapture agreements were incomplete. Additionally, none of the drafts contained a legal description of the benefited area, as required by statute, and Marabella admitted that as of October 1992 the actual area to be benefited had not been agreed upon.

Moreover, contrary to defendant's assertion, plaintiffs presented evidence tending to establish that plaintiffs conditioned the execution of the recapture agreement on the successful execution of an annexation agreement for the Brott property. Lawrence Freedman, plaintiffs' attorney, testified that it was always his understanding that unless the Brott property were annexed to the village the village would not allow the property to connect to any utilities. Once it was determined that Brott was not going to be annexed to the village, and since the village indicated it would not allow parties outside the village to connect, it appeared to plaintiffs, based upon their belief that other properties would not annex in to the village, that any potential benefited area in a recapture agreement would be insufficient to reimburse plaintiffs' costs.

■ Defendant maintains additionally that the trial court erred in finding that defendant had not shown how it was prejudiced by relying on the recapture agreement. Defendant points to the five easements and its implicit participation in the procurement of certain regulatory permits as evidence that it was prejudiced by its reliance on the unsigned recapture agreement. As the trial court correctly noted, "these events would have inevitably taken place in conjunction

with installation, whether or not a recapture agreement was reached." Accordingly, the trial court did not err in finding that defendant failed to show how it was prejudiced.

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County granting plaintiffs' request for permanent injunctive relief unless and until the Village of Mundelein acquires title to the sewer line extension. We turn now to defendant's appeal from the trial court's grant of preliminary injunctive relief.

In its interlocutory appeal brief, defendant, referring to an affidavit, states that if the case proceeds to trial on November 12, 1992, and a decision is made by the trial court promptly thereafter, the interlocutory appeal will become moot, provided the decision is favorable to defendant; or consolidated with an appeal from a grant of permanent relief, if the decision is against defendant. Defendant provides no explanation or rationale for the distinction, nor did defendant make any suggestion how it might be harmed from the wrongful issuance of the preliminary relief if this court were to affirm the order of permanent relief. Because it is incumbent upon reviewing courts not to consider moot or abstract questions or render advisory opinions (*Barth v. Reagan* (1990), 139 Ill. 2d 399, 419), it is necessary to consider, in light of our affirmance of the trial court's grant of permanent injunctive relief, whether we should proceed to decide the merits of defendant's interlocutory appeal.

"A moot case is one which seeks to determine an abstract question, which does not rest upon existing facts or rights, or which seeks a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any cause, cannot have any practical legal effect upon a then existing controversy." (*City of Chicago v. Airline Canteen Service, Inc.* (1978), 64 Ill. App. 3d 417, 430.) If, however, a matter remains in controversy, the cause is not moot. *Chavin v. General Employment Enterprises, Inc.* (1991), 222 Ill. App. 3d 398, 407.

In *Airline Canteen*, the court held that the issues raised by the trial court's refusal to dissolve a temporary restraining order were rendered moot when the restraining order expired on the date the court granted preliminary injunctive relief. The court determined that any issues raised relating to the TRO were moot because defendant made no suggestion nor did the record suggest "even the remote possibility" of damages resulting from the wrongful issuance of the restraining order. (*Airline Canteen*, 64 Ill. App. 3d at 431.) Accordingly, because reversal by the court would have no practical legal effect on the controversy, any issues raised by the refusal to dissolve

the TRO would have been rendered moot. (*Airline Canteen*, 64 Ill. App. 3d at 432.) The court affirmed the grant of preliminary injunctive relief.

Distinguishing *Airline Canteen*, the court in *Chavin* refused to dismiss as moot an interlocutory appeal from consolidated orders of preliminary injunctive relief which remained pending following the trial court's grant of permanent relief and subsequent appeal and consolidation. The court reasoned that because the enjoined party in *Chavin* alleged damages incurred during the period of preliminary relief, if the preliminary injunction were improperly entered, regardless of the propriety of the permanent injunction, the issue of damages remained a matter in controversy. (*Chavin*, 222 Ill. App. 3d at 407.) The court ultimately concluded that the trial court had abused its discretion in granting the plaintiffs' motion for preliminary injunctive relief and in the manner in which the permanent injunction was entered. *Chavin*, 222 Ill. App. 3d at 412.

■ Similar to *Chavin*, the trial court here entered its order of permanent injunctive relief while defendant's interlocutory appeal was pending in this court. Defendant noticed its appeal from the order of permanent relief, and this court granted its motion to consolidate. Unlike *Chavin*, however, and more similar to *Airline Canteen*, a review of the record here reveals that at no place did defendant allege that it incurred damages as a result of the trial court's entry of the preliminary injunction, nor does the record "suggest even the remote possibility" of damages. Although it alludes to homeowners in the North Hills subdivision being unable to connect to the sewer line extension, defendant raised no issue related to how it might be harmed from a wrongful issuance, nor did it bring suit in a representative capacity. Therefore, under the circumstances of the present case, we find *Chavin* distinguishable and find the rationale of *Airline Canteen*, although procedurally not identical, persuasive.

Further, it is noted parenthetically that any claim for statutory damages (see 735 ILCS 5/11—110 (West 1992)) resulting from the wrongful issuance of preliminary relief would now be untimely because defendant obtained no ruling of wrongful issuance prior to an adjudication on the merits (*Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177, 184 ("no damages may be recovered by the defendant if the injunction has not been dissolved"); *Schien v. City of Virden* (1955), 5 Ill. 2d 494, 503, ("[w]here the cause is heard on the merits before the temporary injunction is dissolved, if a permanent injunction is granted the temporary is not thereby dissolved but is merged with the permanent injunction")), nor did defendant preserve the issue through a timely motion to dissolve the order of prelimi-

nary relief (*Panduit Corp. v. All States Plastic Manufacturing Co.* (1980), 84 Ill. App. 3d 1144, 1150 ("key to the preservation of the question of damages for short term preliminary injunctions lies in the timely filing in the trial court of a motion to dissolve the injunction")).

Therefore, even if a reversal of the trial court's order of preliminary relief on the merits were warranted, and we make no such determination, our disposition would not result in any appropriate relief to the prevailing party, which, in effect, would result in this court rendering an advisory opinion. (See *Barth*, 139 Ill. 2d at 419.) It is well established that courts of review will not decide moot or abstract questions or render advisory opinions. (*Barth*, 139 Ill. 2d at 419.) Accordingly, defendant's interlocutory appeal from the circuit court's grant of preliminary injunctive relief is dismissed.

For the foregoing reasons, case No. 2—93—0945, defendant's appeal from the circuit court of Lake County's grant of permanent injunctive relief, is affirmed, and case No. 2—92—1280, defendant's interlocutory appeal from the circuit court's grant of preliminary injunctive relief, is dismissed.

No. 2—92—1280, Dismissed.
No. 2—93—0945, Affirmed.

GEIGER and BOWMAN, JJ., concur.