No. 3-07-0104

Filed February 27, 2009

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2009

| | | |
|---|---|---|
| WEST AMERICAN INSURANCE CO., | ) | Appeal from the Circuit Court of the |
| | ) | Thirteenth Judicial Circuit, |
| Plaintiff-Appellant, | ) | LaSalle County, Illinois, |
| Cross-Appelllee, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 04-MR-57 |
| YORKVILLE NATIONAL BANK, | ) | |
| BERNARD J. WIEGMANN, and | ) | |
| SHERYL H. KUZMA, | ) | The Honorable |
| | ) | James A. Lanuti, |
| Defendants-Appellees, | ) | Judge Presiding. |
| Cross-Appellants. | ) | |

JUSTICE McDADE delivered the opinion of the court:

This appeal arises from a declaratory judgment action filed in the circuit court of LaSalle County to resolve insurance coverage issues. Plaintiff, West American Insurance Company, appeals arguing that the court erred in determining that it owed a duty to provide coverage to the defendant, Yorkville National Bank. Defendant cross-appeals arguing that the court erred in determining defendant is not entitled to sanctions under section 155 of the Insurance Code (215 ILCS 5/155 (West 2004)). For the reasons that follow, we reverse the finding that West American had a duty to provide coverage, affirm the determination that Yorkville National Bank was not entitled to sanctions for alleged vexatious and unreasonable delay, and remand for further

proceedings.

FACTS

The insurance coverage case has its roots in an underlying defamation suit brought by Sheryl Kuzma (Kuzma) against defendant and its vice president, Bernard Wiegmann. Kuzma filed her complaint on September 24, 2001. Specifically, she alleged that her professional reputation had been irreparably damaged following utterances by Wiegmann in his official capacity. In March 2004, a jury returned a $2.2 million verdict in favor of Kuzma and against defendant and Wiegmann. The parties subsequently negotiated a settlement for the reduced amount of $1.75 million. At the time of the defamation, defendant was insured under a policy issued by plaintiff, West American Insurance Company.

The defendant was a client of Zeiter-Dickson Insurance Agency (Zeiter-Dickson). Richard Dickson, one of the founding partners of Zeiter-Dickson, originally placed defendant with the West American Commercial General Liability policy (the policy). The policy cites defendant as the named insured and provides that plaintiff will pay certain damages that the insured becomes legally obligated to pay. As a condition of coverage, the policy requires defendant to notify plaintiff of any lawsuit. Specifically, the policy's notice provision states:

"If a claim is made or 'suit' is brought against any insured, you

must:

(1) Immediately record the specifics of the claim or 'suit' and the

date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or

2

'suit' as soon as practicable."

Although Kuzma filed her complaint on September 24, 2001, defendant did not forward plaintiff written notice of the suit until January 19, 2004. At this time discovery was already closed and the matter had been set for a jury trial to begin on March 15, 2004.

On March 9, 2004, plaintiff filed a complaint for declaratory judgment in the circuit court of LaSalle County. The complaint asserted that defendant breached the notice provision of the policy by failing to provide written notice of the suit for more than 27 months after the suit was filed and a mere eight weeks before the matter was scheduled for trial. Thus, plaintiff sought a judgment that it had no obligation to provide coverage to defendant in connection with the Kuzma suit. Defendant responded arguing that plaintiff received oral notice of the suit on six separate occasions prior to being tendered written notice on January 19, 2004. Defendant asserted that these six instances of oral notice constituted "actual notice" thereby triggering plaintiff's duty to provide coverage.

Defendant's first allegation of "actual notice" involves a conversation in late 2001 or early 2002 between Richard Dickson, who at the time was an agent of Zeiter-Dickson, and James Liggett, who was serving as defendant's president. Liggett states that he told Dickson that defendant was involved in a defamation suit and that the current D&O carrier would not cover the suit. He then asked Dickson whether defendant would have coverage under the Zeiter-Dickson policy. Dickson allegedly responded probably not. The second allegation of "actual notice" involves a conversation in late 2002 between Liggett and Joel Ottosen, another agent of Zeiter-Dickson. Liggett stated that this conversation was very similar to the one he had with Dickson in that he inquired as to whether the policy would provide coverage. Ottosen denies that this

3

conversation ever occurred. The third and fourth allegations of "actual notice" involve two conference calls in 2001 and 2002 between Liggett, Ottosen and Daniel Kramer, who at the time was serving as defendant's in-house counsel. During the alleged calls Liggett again inquired as to whether defendant would have any coverage under the policy. No notes or confirming correspondence exist memorializing these conversations. Ottosen also denies that either of these conversations ever took place. The fifth and sixth instances of claimed "actual notice" occurred during defendant's Board of Directors meetings on September 16, 2002, and November 18, 2002. Dickson was present at both of these meetings. According to the minutes of the meetings, Liggett disclosed to the board that defendant had been sued for defamatory comments made by Wiegmann. He also disclosed the parties to the litigation and that there were some additional legal expenses involved with the lawsuit.

Following a bench trial, the circuit court granted a declaratory judgment in favor of defendant, ruling that plaintiff owed defendant a duty to provide coverage in connection with the Kuzma suit. As to defendant's failure to comply with the policy's notice provision the court stated:

> "[E]ven though the policy says they have to submit and tender the complaint in writing to be covered, that [is] not the law. The law is once the insurance company receives actual notice of the lawsuit, they have a duty to defend it. The only way they get out of that is by, according to the Supreme Court, contact[ing] the insured to ascertain whether the insurer's assistance is desired. So it would seem under *Cincinnati* [*Cincinnati v. West American Insurance*

4

*Co.*, 183 Ill. 2d 317, 701 N.E.2d 499 (1998)] that once an insurance company receives actual notice that a lawsuit has been filed they have an obligation to proceed. To either defend it or contact the insured to find out if they want them to defend it."

The court concluded that at least two, and possibly four, of the six allegations of oral notice were sufficient to give plaintiff "actual notice" of the Kuzma suit. Specifically, the court stated:

"*Cincinnati*, I think, and I don't think you need expert testimony for this, *Cincinnati* kind of indicates to me that the burden is on Dickson. The lawsuit has been filed. You've been told about the lawsuit. You don't have to have it officially tendered to have a duty to defend. At that point you have an obligation to follow-up, I think, and say you've been sued, let me see the complaint, tell me what it's about. You just asked me if you were covered in a lawsuit, I better get the information so I can decide. And it's stipulated in the record that he was an agent of the agency at the time this happened. He was the person they'd been doing business with for years. This happened outside the board of director's meetings. He was specifically questioned in the bank office about this lawsuit. He

5

found out about the lawsuit two more times while he was at the board of directors meetings and apparently never made any inquiry to the bank to follow-up. I think under *Cincinnati*, the knowledge of Dickson is imputed to the company and under *Cincinnati*, once the company knows there's a lawsuit, they've got an obligation to follow-up."

Upon finding plaintiff had a duty to provide coverage, the court directed plaintiff to pay stipulated damages in the amount of $1,982,778.78. While this amount represented the total amount of damages including any penalties under section 155, the court found that plaintiff's actions after receiving notice were not vexatious and unreasonable. Thus, the court denied defendant's motion for sanctions under section 155 of the Insurance Code (215 ILCS 5/155 (West 2004)). Both parties filed notices of appeal from the circuit court judgment.

STANDARD OF REVIEW

The parties disagree on the standard of review. Plaintiff asserts our review is *de novo*, calling our attention to the fact that where, as here, the material facts of a case are undisputed, the insured's diligence in forwarding the requisite notice to the insurer becomes solely a question of law. See *Grasso v. Mid-Century Insurance Co.*, 181 Ill. App. 3d 286, 289, 536 N.E.2d 977, 979 (1989) Defendant counters by arguing that the question of whether the six alleged instances of oral notice constitute "actual notice" is a factual determination and therefore will not be reversed unless such determination is against the manifest weight of the evidence. While defendant's assertion is true, it ignores the fact that we first must determine whether defendant's

6

written notice 27 months after the suit was filed violated the policy's notice provision, and if so, what effect that has on defendant's right to coverage. Defendant does not dispute the fact that it did not provide written notice until 27 months after suit was filed. Instead, defendant argues that "actual notice trumps technical policy language." Because this argument presents a disputed question of law, our review as to this issue is *de novo*. *Gines v. Ivy*, 358 Ill. App. 3d 607, 609-10, 832 N.E.2d 937, 938 (2005).

ANALYSIS

Appeal

We note at the outset that this appeal requires us to consider the appropriate application of the supreme court's decisions in *Cincinnati Cos. v. West American Insurance Co.,* 183 Ill. 2d 317, 701 N.E. 2d 499 (1998), and the line of cases exemplified by *Country Mutual Insurance Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 8586 N.E. 2d 338 (2006). *Cincinnati* addressed the narrow question – on which the appellate districts were in conflict – of whether the actual "tender" of a defense is necessary to trigger an insurer's duty to defend. In resolving that question the supreme court considered the development of an insurer's duty to defend without reference to policy terms and defenses. The court concluded that so long as the insurer has actual notice of the claim, "tender" is not required. By contrast, *Country Mutual* involved the question of whether an insurer could be held to a duty to defend when there had been a failure of conditions precedent expressly declared in the policy. As in *Cincinnati*, the actual question before the court was a narrow one – can an insurer's right to rely on the written notice term of its contract be defeated *solely* by its inability to show it was prejudiced by the delay. The supreme court held that it could not, although prejudice was one factor to be considered. The division in

our panel reflects different interpretations of the impact of those two cases.

In the instant case, the parties and the trial court focused almost exclusively on whether or not certain informal contacts between individuals connected with West American and Yorkville Bank arose to "actual notice" triggering a duty to defend. A similar focus is seen in the briefs and oral argument in this appeal. Under the specific circumstances of this case, however, we believe that the two relevant questions here on appeal regarding the issue of whether the circuit court erred in determining that plaintiff owed a duty to provide coverage to the defendant are: 1) whether defendant's written notice 27 months after the suit was filed violated the policy's notice provision; and if so, 2) what effect defendant's breach has on defendant's right to coverage. The issue of actual notice has no bearing on these questions.

Plaintiff argues that defendant's written notice 27 months after the suit was filed and a mere eight weeks before the matter was scheduled for trial does not comply with the policy's notice provision that required defendant give "written notice of the claim or suit as soon as practicable." Plaintiff takes the position that the six informal contacts between individuals connected with West American and Yorkville Bank do not constitute "actual notice" and, thus, it has no obligation to provide coverage to defendant in light of defendant's alleged failure to comply with the policy's notice provision. Defendant responds arguing that plaintiff received oral notice of the suit on six separate occasions prior to being tendered written notice on January 22, 2004. Defendant asserts that these six instances of oral notice constituted "actual notice" thereby triggering plaintiff's duty to provide coverage. Defendant, like the circuit court, relies upon *Cincinnati v. West American Insurance Co.*, 183 Ill. 2d 317, 701 N.E.2d 499 (1998) in support of this proposition. Even though plaintiff has diligently pursued its claim that written notice was

required to trigger its obligation to provide coverage, it has also proceeded on appeal as though *Cincinnati* stated the only law that was relevant in this case.

Our supreme court in *Country Mutual Insurance Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 856 N.E.2d 338 (2006) addressed the proper construction of insurance policy notice provisions in the context of declaratory judgment actions asserting policy defenses. The insureds in *Country Mutual* sued each other alleging trademark violations related to the use of a business name. The insurer subsequently filed a complaint for declaratory judgment. The insurer sought a judgment that it had no obligation to defend or indemnify either insured in connection with the trademark lawsuit. The insurer argued that the insureds breached their policies' notice provision by failing to inform it in writing of the lawsuits for more than 20 months. The notice provision stated:

> "If a claim is made or 'suit' is brought against any insured, you
>
> must:
>
> (1) Immediately record the specifics of the claim or 'suit' and the
>
> date received; and
>
> (2) Notify us as soon as practicable.
>
> You must see to it that we receive written notice of the claim or
>
> 'suit' as soon as practicable."

While the Country Mutual insureds conceded that their notice was late, they contended that the delay did not prejudice the insurer, as the insurer would have had to pay for independent counsel for both parties regardless of when it received notice. Thus, the insureds argued that the delay in notice should not relieve the insurer of its duty to provide coverage. The trial court granted a

9

declaratory judgment to the insurer and the appellate court affirmed. The insureds subsequently sought further review.

In affirming the judgment of the appellate court, our supreme court noted that the presence or absence of prejudice to the insurer was only one factor to consider when determining whether the insured fulfilled a policy condition requiring reasonable notice. *Country Mutual*, 222 Ill. 2d at 317, 856 N.E.2d at 346. However, the court held that once it was determined that the insurer did not receive reasonable notice of an occurrence or a lawsuit, the insured could not recover, regardless of whether the lack of reasonable notice prejudiced the insurer. *Country Mutual*, 222 Ill. 2d at 312, 856 N.E.2d at 343. Specifically, the court stated:

"When construing the language of an insurance policy, a court is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy. [Citation.] An insurance policy must be construed as a whole, giving effect to every provision. [Citation.] If the words used in the policy are unambiguous, they are given their plain, ordinary, and popular meaning. [Citation.] Although insurance policies are construed liberally in favor of coverage, this rule of construction comes into play only when the policy language is ambiguous. [Citation.]

*** [I]nsurance policy notice provisions *** impose valid prerequisites to insurance coverage. [Citations.] A policy condition requiring notice 'as soon as practicable' is interpreted to mean 'within a reasonable time.' [Citation.] Whether notice has

10

been given within a reasonable time depends on the facts and circumstances of each case. [Citation.] *Breaching a policy's notice clause by failing to give reasonable notice will defeat the right of the insured party to recover under the policy.*" (Emphasis added.) *Country Mutual*, 222 Ill. 2d at 311-12, 856 N.E.2d at 342-43.

The notice provision at issue here is identical to the notice provision found in *Country Mutual*. Both policies conditioned coverage upon receiving "written notice" of the lawsuits "as soon as practicable." This condition ensures that the insurance carrier is allowed the opportunity to adequately investigate the facts of the occurrence, take part in discovery and settlement negotiations and also defend the suit if the matter proceeds to trial. *Zurich Insurance Co. v. Walsh Construction Co.*, 352 Ill. App. 3d 504, 509, 816 N.E.2d 801, 806 (2004). While the court in *Country Mutual* did not reach the issue of whether the insureds' written notice 20 months after suit had been filed was in fact reasonable, Illinois courts have held that a delay of even a few months in giving notice breaches the policy as a matter of law and defeats coverage. *Montgomery Ward Co. v. Home Insurance Co.*, 324 Ill. App. 3d 441, 449, 753 N.E.2d 999, 1005 (2001); *Equity General Insurance Co. v. Patis*, 119 Ill. App. 3d 232, 237, 456 N.E.2d 348, 352 (1983); *Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co.*, 70 Ill. App. 3d 296, 300, 388 N.E.2d 253, 256 (1979).

In the present case, it is undisputed that 27 months passed between the initiation of the defamation suit by Kuzma and defendant's written notice of the suit. We do not believe that a delay of 27 months constitutes notice within a reasonable time in light of the fact that discovery

11

had already closed and the case was scheduled to proceed to trial in eight weeks. Upon careful review, we find no authority that has interpreted a 27 month delay to satisfy the language "as soon as practicable." Moreover, defendant has failed to provide us with any such authority. Giving the language of the notice provision its plain and ordinary meaning, we conclude that defendant breached the notice clause as a matter of law.

In coming to this conclusion, we reject defendant's assertion that "actual notice trumps technical policy language." This assertion offends the well-settled principle of contract construction that each provision of a contract must be given its full effect. *Country Mutual*, 222 Ill. 2d at 311, 856 N.E.2d at 343. We accomplish this task by giving the terms used in each provision their plain, ordinary and popular meaning. *Country Mutual*, 222 Ill. 2d at 311, 856 N.E.2d at 343. Here, the circuit court's acceptance of what it deemed "actual notice" acted to render the policy's written notice provision meaningless. In essence, the court rewrote the notice provision by substituting the term "actual notice" for the term "written notice." The parties here bargained for a promise of coverage in exchange for "written notice *** as soon as practicable." The circuit court here failed to give effect to these intentions as unambiguously expressed by the words of the policy. See *Country Mutual*, 222 Ill. 2d at 311, 856 N.E.2d at 342-43.

Moreover, we disagree with both the parties' and the circuit court's interpretation of *Cincinnati v. West American Insurance Co.*, 183 Ill. 2d 317, 701 N.E.2d 499 (1998). Upon review, we do not read *Cincinnati* to stand for the proposition that "actual notice" trumps technical policy language. Instead, *Cincinnati* involved a conflict among the appellate court districts concerning whether an insured had a duty to "tender" the defense of a lawsuit to the insurer (*Institute of London Underwriters v. Hartford Fire Insurance Co.*, 234 Ill. App. 3d 70,

12

599 N.E.2d 1311 (1992)) or whether "actual notice without tender" is sufficient to trigger the duty to defend *(Federated Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 282 Ill. App. 3d 716, 668 N.E.2d 627 (1996)). While the court determined that an insurer's duty to defend is triggered solely by its having "actual notice" of a claim against its insured (*Cincinnati*, 183 Ill. 2d at 325, 701 N.E.2d at 503), the court acknowledged that policy defenses did not factor in its decision (*Cincinnati*, 183 Ill. 2d at 323, 701 N.E.2d at 502). Specifically, the court observed in Footnote 1:

> "We note that neither Cincinnati nor West America argues governance of the terms of the policy with respect to when the duty to defend arises. Consequently, policy defenses have not been a factor [in] our decision." *Cincinnati*, 183 Ill. 2d at 323, 701 N.E.2d at 502.

The court went on to find that the question of whether an insurer has a duty to defend usually depends on the allegations of the complaint and the scope of the policy. *Cincinnati*, 183 Ill. 2d at 323, 701 N.E.2d at 502. Specifically, the court stated:

> "In order to determine whether [an] insurer's duty to defend [an insured] has arisen, the court must compare the allegations of the underlying complaint to the policy language. [Citations.] *** If the court determines that these allegations fall within or *potentially within* the policy's coverage, the insurer has a duty to defend [an] insured against the underlying complaint. [Citations.]" (Emphasis in original) *Cincinnati*, 183 Ill. 2d at 323, 701 N.E.2d at 502,

13

quoting *Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 125, 607 N.E.2d 1204, 1220.

While *Cincinnati* does in fact stand for the proposition that the duty to defend arises when the insurer has "actual notice" of a suit pending against its insured, it appears clear that an insurer can be absolved of this duty by obtaining a declaratory judgment that it has no obligation to defend or indemnify under the actual terms of the policy. See *Country Mutual*, 222 Ill. 2d at 312, 856 N.E.2d at 343. In the present case, plaintiff exercised its preemptive right to seek a determination of its responsibilities under the policy. Specifically, plaintiff's complaint for declaratory judgment asked whether defendant's written notice 27 months after the suit was filed violated the policy's notice provision, and if so, what effect that has on defendant's right to coverage. Thus, it is the actual language of the notice provision that is at issue -- not "actual notice" as discussed in *Cincinnati*. We therefore find that our case stands in posture with *Country Mutual* and it is its analysis and that of other cases construing policy notice provisions, not the reasoning of *Cincinnati*, that controls.

Illinois law is clear that insurance policy notice provisions impose valid prerequisites to insurance coverage (*Country Mutual*, 222 Ill. 2d at 311, 856 N.E.2d at 343), and a delay of even a few months in giving notice breaches the policy as a matter of law (*Montgomery Ward*, 324 Ill. App. 3d at 449, 753 N.E.2d at 1005; *Equity General Insurance*, 119 Ill. App. 3d at 237, 456 N.E.2d at 352; *Illinois Valley Minerals*, 70 Ill. App. 3d at 300, 388 N.E.2d at 256). Our supreme court specifically found that breaching a policy's notice clause by failing to give reasonable notice will defeat the right of the insured party to coverage under the policy. *Country Mutual*, 222 Ill. 2d at 312, 856 N.E.2d at 343. We find that Yorkville Bank's written notice 27 months after filing

14

of the lawsuit does not satisfy its obligation to provide written notice of the claim or suit "as soon as practicable." Because defendant breached the policy's notice provision to provide written notice as soon as practicable, plaintiff is relieved of any duty it had to provide defendant coverage under the policy.

We acknowledge the many cases cited by the dissent in support of its position that *Cincinnati* requires us to affirm the trial court. While we believe most of them are distinguishable because the contracts do not require written notice, two do support the argument of the dissent even where written notice is demanded in the contract. See *American Home Assurance Company v. The City of Granite City*, 59 Ill. App. 3d 656, 375 N.E. 2d 969 (1978) and *McLaughlin v. Attorneys' Title Guaranty Fund, Inc.*, 61 Ill. App. 3d 911, 378 N.E. 2d 355 (1978). Because the case law appears to be in conflict, we believe this is a matter that needs to be resolved, hopefully sooner rather than later, by the supreme court.

Because we have determined that defendant breached the policy's notice provision and is therefore not entitled to coverage under the policy, we need not reach the question of whether defendant's six allegations of oral notice prior to forwarding written notice constituted "actual notice." Thus, we express no opinion as to whether plaintiff had "actual notice" of Kuzma's lawsuit. Instead, we only find that plaintiff did not receive notice as required by the policy which the parties bargained for and entered into voluntarily. Accordingly, we reverse the circuit court's finding that defendant is entitled to a declaratory judgment that plaintiff owes a duty to provide coverage (defense and indemnifications) to defendant and remand to the LaSalle County Circuit Court for further proceedings. We note that the circuit court's order required West American to also indemnify defendants, apparently on the basis that it had a duty to defend. We believe this

15

issue also needs to be re-examined on remand.

Cross Appeal

On cross appeal, defendant argues that the circuit court erred in determining defendant is not entitled to sanctions under section 155 of the Insurance Code (215 ILCS 5/155 (West 2004)). Section 155 of the Insurance Code provides, in pertinent part, as follows:

"(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $60,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action. 215 ILCS 5/155 (West 2004)."

At the outset, we hold that the question concerning section 155 relief is moot. A moot case is one which seeks to determine an abstract question – one which does not rest upon existing

16

facts or rights. *Pasquinelli v. Village of Mundelein*, 257 Ill. App. 3d 1057, 1067, 630 N.E.2d 1113, 120 (1994). Section 155 provides a remedy for an insured who encounters unnecessary difficulties when an insurer withholds policy benefits. *Bedoya v. Founders Insurance Company*, 293 Ill. App. 3d 668, 679, 688 N.E.2d 757, 764 (1997). However, a defendant cannot be liable for section 155 relief where no benefits are owed. *Martin v. Country Mutual Insurance Company*, 318 Ill. App. 3d 751, 764, 742 N.E.2d 848, 857 (2000); *O'Rourke v. Access Health, Inc.*, 282 Ill. App. 3d 394, 406, 668 N.E.2d 214, 222 (1996). Thus, because we have already determined that no benefits are owed under the policy, the question of section 155 sanctions is moot. Even if we were to consider this question on its merits, however, we would find that the trial court did not err in determining that plaintiff's conduct was not vexatious or unreasonable.

The question of whether the insurer's action and delay is vexatious and unreasonable is a factual one committed to the discretion of the circuit court. Thus, the circuit court's determination will not be disturbed on review unless an abuse of discretion is demonstrated in the record. *Dark v. United States Fidelity & Guaranty Co.*, 175 Ill. App. 3d 26, 30-31, 529 N.E.2d 662, 666 (1988). The court must consider the insurer's conduct in the totality of the circumstances. *Estate of Price v. Universal Casualty Co.*, 322 Ill. App. 3d 514, 518, 750 N.E.2d 739, 743 (2001). Specifically, a court should look to the insurer's attitude, whether the insured was forced to file suit to recover, and whether the insured was deprived of the use of its property. *Estate of Price*, 322 Ill. App. 3d at 517, 750 N.E.2d at 742.

A *bona fide* dispute over coverage existed in this case. As already explained, defendant breached the policy's written notice provision, which left plaintiff in doubt about its duty to provide coverage. As a result, plaintiff filed its declaratory judgment action. We have already

17

determined that defendant did not provide its insurer with written notice within a reasonable time as required by the contract. Therefore, the earliest time West American was legally on notice and required to consider its duties and obligations under the policy was January 19, 2004, (or January 22 when the notice was actually received). Accordingly we review the trial court's decision in light of West American's conduct during the 59 days between January 19 and March 9, 2004, when it filed its declaratory judgment action.

We find no more support in the record than did the trial court for concluding that plaintiff acted vexatiously or unreasonably in determining its course of action. On January 22, 2004, three days after receiving written notice, Carolyn Maher, a litigation specialist for plaintiff, contacted defendant after a cursory review of defendant's claim for coverage. Maher informed defendant that the Kuzma suit would be covered under the policy. Maher, however, instructed defendant's counsel to continue representing defendant in the litigation. Fourteen days later Maher sent defendant a letter on March 5, 2004, indicating to defendant that plaintiff was still in the process of evaluating the claim. Plaintiff filed its complaint for declaratory judgment on March 9, 2004. While defendant takes specific issue with Maher's January 22nd telephone call and March 5th letter, we do not view these actions as vexatious or unreasonable given the relatively short period of time between defendant's forwarding of written notice and the impending Kuzma lawsuit. Moreover, Maher's initial error in judgment as to whether plaintiff would provide coverage did not in any way compromise or affect defendant's defense in the Kuzma suit. Again, Maher specifically instructed defendant's counsel to continue representing defendant in the litigation. Thus, when viewing the totality of the circumstances we cannot say that the circuit court abused its discretion in determining defendant is not entitled to sanctions under section 155.

18

Accordingly, we affirm the circuit court's finding that defendant is not entitled to sanctions under section 155 of the Insurance Code (215 ILCS 5/155 (West 2004)).

For the above reasons, the circuit court's order is reversed on the issue of coverage, affirmed on the issue of sanctions, and the cause remanded for further proceedings consistent with this order.

Reversed in part, affirmed in part, and remanded.

JUSTICE SCHMIDT, specially concurring:

I concur but write separately to point out what I think should be obvious. Many of the insurance coverage notice cases involve swearing contests between the insurance carrier and its insured as to whether oral notice was given. This case was decided below on just such a contest. The contract of insurance contained a valid condition precedent which required written notice of a claim. The obvious intent of this condition is to avoid these "he said-she said" coverage disputes. There is nothing either draconian or unfair about this condition. The written notice provision is valid. The contract language has obviously been approved by the Department of Insurance. There is no reason not to enforce it.

The underlying lawsuit was filed September 24, 2001. Written notice was not given to West American until January 19, 2004, 2½ years later and less than 2 months before a jury trial was to begin. "Under Illinois law, a delay of even a few months in giving notice breaches the policy as a matter of law, defeats coverage, and justifies the entry of summary judgment for the

19

insurance company." *Montgomery Ward & Co. v. Home Insurance Co.*, 324 Ill. App. 3d 441, 449, 753 N.E.2d 999, 1005 (2001), citing *Equity General Insurance Co. v. Patis*, 119 Ill. App. 3d 232, 237-38, 456 N.E.2d. 348, 352 (1983). (involving less than a five-month delay in fire loss notification); *Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co.*, 70 Ill. App. 3d 296, 300, 388 N.E.2d 348, 256 (1979) (involving a six-month delay of notice from the date of the river barge accident).

The bank had lawyers. It waited until less than two months before a jury trial in the defamation case to give written notice. Under these circumstances, I do not know how any reasonable person could find that the written notice was given "as soon as practicable" as required by the contract of insurance. There is no justification in law or equity for not enforcing the written notice provision of the contract.

The dissent in this case misconstrues the import of the *Cincinnati* case. The *Cincinnati* case relied upon by the dissent did not deal with a written notice provision. Furthermore, in *Cincinnati*, there was absolutely no issue as to whether West American actually had notice. In the case before us, all the bank had to do was send a copy of the complaint to the insurer. As contemplated by the contract between the parties, this would have obviated any swearing contest as to whether the insurer had notice and would have clearly given the insurer the kind of notice necessary to locate and defend the claim.

JUSTICE LYTTON concurring in part, dissenting in part:

20

I dissent from the majority's conclusion that plaintiff did not have a duty to defend and indemnify Yorkville National Bank. Thus, I also disagree with the majority's holding that defendant's request for sanctions is moot. Nevertheless, I concur with the majority's finding that the trial court did not abuse its discretion by denying defendant sanctions.

## I. DUTY TO DEFEND AND INDEMNIFY

I would affirm the trial court's ruling that plaintiff had actual notice of the Kuzma lawsuit and, thus, had a duty to defend and indemnify Yorkville National Bank. In reaching the opposite conclusion, the majority has (a) disregarded the arguments of the parties and the applicable rule of law, (b) misapplied the law that it claims to rely upon, and (c) ignored Illinois precedent. Applying the appropriate law to the facts of this case, I find that plaintiff breached its duty to defend and indemnify Yorkville National Bank.

## A. Actual Notice Under Cincinnati

The majority points out that plaintiff never disputed the application of actual notice to this case. Nevertheless, the majority, on its own, decided that actual notice was irrelevant. Such a ruling is contrary to Illinois law. See Cincinnati Cos. v. West American Insurance Co., 183 Ill. 2d 317, 328, 701 N.E.2d 499, 504 (1998). In Cincinnati, the supreme court clearly stated that actual notice of a claim triggers an insured's duty to defend. Cincinnati, 183 Ill. 2d at 328, 701 N.E.2d at 504. The court adopted this rule for a number of reasons: (1) the insurer is in a better position than the insured to know the scope of the insurance contract and insurance law; (2) the insurer, having received consideration for including the insured on its policy, should not be allowed to avoid its responsibilities as a result of the insured's ignorance; and (3) the state has an interest in having insured persons adequately represented in litigation. Cincinnati. 183 Ill. 2d at 328-29, 701 N.E.2d at 504-05.

21

The majority attempts to limit application of the supreme court's rule in Cincinnati only to cases involving written tender requirements contained in the policy. However, the court's decision in Cincinnati does not support such a limitation. The reasons set forth by the supreme court for adopting the actual notice rule apply not only to cases where a written tender requirement is at issue, but also to cases in which a policy has a written notice requirement. In both situations, the insurer "requires an insured to jump through meaningless hoops toward an absurd end: telling the insurer something it already knows." See Federated Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co., 282 Ill. App. 3d 716, 725, 668 N.E.2d at 627, 632-33 (1996).

No other Illinois court has ruled, as the majority does here, that the Cincinnati court's decision should be limited to cases involving a written tender requirement, rather than a written notice requirement. In fact, courts have applied the actual notice rule to cases involving written notice requirements. See Illinois Founders Insurance Co. v. Barnett, 304 Ill. App. 3d 602, 609, 710 N.E.2d 28, 33 (1999); Employers Reinsurance Corp. v. E. Miller Insurance Agency, Inc., 332 Ill. App. 3d 326, 339, 773 N.E.2d 707, 717 (2002). Thus, the majority has carved out an exception to the actual notice rule that is not recognized or supported by Illinois law.

### B. Majority's Reliance on Country Mutual

#### 1. Inapplicability of Country Mutual

Despite the clear application of the actual notice rule to this case, the majority contends that we should ignore Cincinnati and instead rely on Country Mutual Insurance Co. v. Livorsi Marine, Inc., 222 Ill. 2d 303, 856 N.E.2d 338 (2006). According to the majority, this case "stands in posture with Country Mutual * * *." We disagree.

In Country Mutual, the parties stipulated that the insurer did not receive actual notice of the

22

lawsuit until the insureds provided written notice more than 20 months after the suit was filed. Country Mutual, 222 Ill. 2d at 307, 856 N.E.2d at 340. Because there was no contention that the insurer received actual notice of the lawsuit before the insureds provided their written notice, Country Mutual has no relevance here.

The court in Country Mutual did not discuss actual notice because it was not an issue in that case. On the other hand, Illinois cases have held that an insured may rely on actual notice in determining the reasonableness of the notice given. See University of Illinois v. Continental Casualty Co., 234 Ill. App. 3d 340, 365, 599 N.E.2d 1338, 1355 (1992); Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co., 70 Ill. App. 3d 296, 301, 388 N.E.2d 253, 257 (1979). Thus, by ignoring the actual notice plaintiff received, and focusing exclusively on the written notice that defendant provided, the majority has come to a conclusion unsupported by Illinois law. See University of Illinois, 234 Ill. App. 3d at 365, 599 N.E.2d at 1355; Illinois Valley Minerals Corp., 70 Ill. App. 3d at 301, 388 N.E.2d at 257.

## 2. Majority's Misapplication of Country Mutual

Even if Country Mutual somehow applied to this case, the majority has misapplied it. In Country Mutual, the court held that a policy condition, like the one in this case, requiring notice "[a]s soon as practicable" means "within a reasonable time." 222 Ill. 2d at 311, 856 N.E.2d at 343. Whether notice has been given within a reasonable time depends on the facts and circumstances of each case. Country Mutual, 222 Ill. 2d at 311-12, 856 N.E.2d at 343. To determine whether notice is reasonable, courts must analyze several factors, including (1) the specific language of the policy's notice provision, (2) the insured's sophistication in commerce and insurance matters, (3) the insured's awareness of an event which may trigger insurance coverage, (4) the insured's diligence in

23

ascertaining whether policy coverage is available, and (5) the presence or absence of prejudice to the insured. Country Mutual, 222 Ill. 2d at 312-13, 856 N.E.2d at 343-44.

The majority concludes that since plaintiff did not receive written notice of the lawsuit until 27 months after suit was filed, such notice was per se unreasonable. Such a conclusion is not supported by Country Mutual, where the supreme court specifically refused to express an opinion regarding whether a 20-month delay was unreasonable. See Country Mutual, 222 Ill. 2d at 321, 856 N.E.2d at 348. The length of time in giving notice is just one factor to consider in determining whether notice is reasonable. See American Home Assurance Co. v. City of Granite City, 59 Ill. App. 3d 656, 659, 375 N.E.2d 969, 972 (1978). There is no rule that a lengthy delay in providing notice absolutely bars recovery under a policy requiring notice. See American Country Insurance Co. v. Bruhn, 289 Ill. App. 3d 241, 248, 682 N.E.2d 366, 371 (1997). In fact, courts have found that delays of two years and longer are not per se unreasonable. See, e.g., Allstate Insurance Co. v. Cariaoto, 194 Ill. App.3d 767, 551 N.E.2d 382 (1990) (2 ½ year delay); Grasso v. Mid-Century Insurance Co., 181 Ill. App. 3d 286, 536 N.E.2d 977 (1989) (two-year delay ); Brotherhood Mutual Insurance Co. v. Roseth, 177 Ill. App. 3d 443, 532 N.E.2d 354 (1988) (two-year delay).

The majority fails to analyze the numerous factors outlined in Country Mutual to determine the reasonableness of the notice in this case. Instead, it considers only the length of time it took defendant to provide written notice. Again, the majority's decision is not supported by Illinois law, including the case it relies upon to reach its conclusion.

## C. Illinois Precedent

Finally, I disagree with the majority's suggestion that applying the actual notice rule to this case would be a departure from well-established law. For decades, Illinois courts have held that

notice that does not strictly comply with an insurance policy's notice provision may still constitute notice adequate to trigger an insurer's duties. See <u>Simmon v. Iowa Mutual Casualty Co.</u>, 3 Ill. 2d 318, 121 N.E.2d 509 (1954) (notice given by someone other than insured was effective even though policy required notice to be given by insured); <u>Barnett</u>, 304 Ill. App. 3d at 612, 710 N.E.2d at 35 (insured's failure to forward a copy of suit and summons to insurer as required by insured's policy did not absolve insurer of duties to defend and indemnify insured).

In <u>Simmon</u>, the insurance policy at issue required the insured to give written notice of an accident to the insurer or any of it authorized agents as soon as practicable. <u>Simmon</u>, 3 Ill. 2d at 320-21, 121 N.E.2d at 511. The policy also provided that no action would lie against the insurer unless the insured complied with all of the policy's terms. <u>Simmon</u>, 3 Ill. 2d at 321, 121 N.E.2d at 511. The insured was involved in an automobile accident. <u>Simmon,</u> 3 Ill. 2d at 319, 121 N.E.2d at 510. The insured never gave notice to his insurance company of the accident, but the insurance company received a letter from the injured party's attorney three months after the accident. <u>Simmon</u>, 3 Ill.2d at 319-20, 121 N.E.2d at 510. The appellate court held that the insurer had no duty to defend the insured because he failed to give reasonable notice to the insurer. 3 Ill. 2d at 321, 121 N.E.2d at 321. The supreme court reversed, holding that as long as reasonable notice is given to the insurer it does not matter who gives the notice. <u>Simmon</u>, 3 Ill.2d at 323, 121 N.E.2d at 512.

Since the supreme court's ruling in <u>Simmon</u>, courts have held that notice is effective even if it is not provided by the insured. See <u>Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co.</u>, 70 Ill. App. 3d 296, 388 N.E.2d 253 (1979); <u>McLaughlin v. Attorneys' Title Guaranty Fund, Inc.</u>, 61 Ill. App. 3d 911, 378 N.E.2d 355

25

(1978); Rivota v. Kaplan, 49 Ill. App. 3d 910, 364 N.E.2d 337 (1977). Simmon and its progeny demonstrate that an insured's failure to strictly comply with a notice provision will not defeat coverage when the insurance company receives actual notice of a claim.

### D. Trial Court Ruling Should be Affirmed

Here, the trial court found that plaintiff received actual notice of the Kuzma suit, thereby triggering plaintiff's duty to defend and indemnify. I agree.

"Actual notice" is "notice sufficient to permit the insurer to locate and defend the lawsuit." Cincinnati, 183 Ill. 2d at 329, 701 N.E.2d at 505. In order to have actual notice to locate and defend, the insurer must know both that a cause of action has been filed and that the complaint falls within or potentially within the scope of coverage of one of its policies. Cincinnati, 183 Ill. 2d at 329-30, 701 N.E.2d at 505.

In this case, the trial court made fact findings that Dickson, an agent of plaintiff, received oral notice of the Kuzma lawsuit from Liggett in late 2001 or early 2002, when he told Dickson about Kuzma's defamation lawsuit and asked Dickson if its insurance policy would provide coverage for the suit. This notice was sufficient to permit plaintiff to locate and defend the Kuzma lawsuit. Because plaintiff failed to do so, it breached its duties under its policy and should be liable to Yorkville National Bank. Thus, I would affirm the trial court's decision on this issue.

### II. SANCTIONS

26

The majority held that the issue of sanctions was moot because plaintiff owed no benefits under the policy.  Because I would find that plaintiff owed Yorkville National Bank a duty to defend and indemnify, I disagree that the issue of sanctions is moot. Nevertheless, I concur with the majority's decision to affirm the trial court's denial of sanctions because I believe that there was a <u>bona</u> <u>fide</u> dispute over coverage in this case.